THE MAYOR AND ALDERMEN OF THE CITY OF SAVANNAH, plaintiffs in error, *vs.* GEORGE V. WALDNER, defendant in error.

1. It is the duty of a municipal corporation, vested by law with authority over the streets, whilst dangerous works, such as sewers, etc., are being constructed across a street, to have proper precautionary measures taken to prevent accidents to passengers during such construction, whether the same is being done by the corporation through its own servants, or by contract, or by sub-contractors under a primary contractor. Such duty, at least, in the cases of independent contractors or sub-contractors is not founded on the principle of *respondeat superior*, but is deducible from the authority in the corporation over the streets and the obligation flowing therefrom to protect the public against nuisances or dangerous obstructions in the highways of the city.

2. In an action by a plaintiff against a corporation for damages caused to his person and property on account of the default of defendant under the foregoing rule, it was error in the Court to charge the jury, " that in estimating the damages they could take into consideration the expenses to which plaintiff had been put in and about his said suit," there being no proof of what such expense was, and such expenses are only recoverable " when the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense."

Municipal corporations. Streets. Damages. Expenses. Charge of Court. Before Judge SCHLEY. Chatham Superior Court. January Term, 1873.

George V. Waldner brought case against the Mayor and Aldermen of the City of Savannah for $16,000 00 damages, alleged to have been sustained by him by reason of the negligent conduct of the defendant in not keeping Whitaker street in good repair at its intersection with Hall street, and in leaving open a ditch or sewer across the street first aforesaid at said point of intersection, into which, on the night of December 5th, 1871, the plaintiff and his horse were precipitated, to his great damage. The defendant pleaded not guilty.

The evidence made substantially the following case:

On the night of December 5th, 1871, the plaintiff was re-

turning home from his business, on horseback, through Whitaker street, one of the public highways of the city. His horse started, stumbled and fell into a sewer. which was opened across the street, some eight or nine feet deep. Before the accident, his horse was worth $250 00; he was subsequently sold at auction for $50 00. The plaintiff was injured both externally and internally. Previous to the accident he was a hearty, strong man; since, his health has been very much impaired. He believes this result to be attributable to the injuries he then sustained. There were no lights placed at the opening to warn persons passing.

The contract to build this sewer had been let out by the defendant to Charles Van Horn. He had sub-let the job to McCrohan & Kirlin, who were engaged in doing the work at the time of the accident. The contract stipulated that the work should be done under the supervision of the city surveyor to see that the contract was complied with. It contained no provision to the effect that the contractors should erect lights at night.

The contest was as to whether the defendant, or the contractors doing the work, were liable to the plaintiff, and therefore much of the evidence is omitted.

The defendant requested the Court to charge the jury as follows:

1st. "That the doctrine of *respondeat superior* applies only where the relation of master and servant exists; if, therefore, the jury find under the evidence that McCrohan and Kirlin were not the servants of the city, that the city is not responsible."

2d. "That sub-contractors are not the servants of the superior; if, therefore, the jury find under the evidence that McCrohan and Kirlin were sub-contractors, the city is not liable.

3d. "That public officers in the discharge of a public duty are not responsible for the negligence and omissions of those employed by them.

4th. "That the Mayor and Aldermen in ordering the con-

struction of a sewer in the street, though it may be for the time being an obstruction of the street, it is not a violation of their duty to keep the streets in repair.

5th. "That a municipal corporation is not. liable for the misfeasance, negligence or omissions of those employed by it.

6th. "That the duty of putting up lights is a duty imposed upon the persons making the excavation, and not upon the city employing them.

7th. "If the jury find that the injury was occasioned by the stumbling of the horse, and not because there were no lights, the city is not liable."

The Court proceeded to charge the jury, and referring to each request separately, refused to give it in charge. The jury rendered a verdict for the plaintiff for $2,000 00. The defendant moved for a new trial on the following grounds:

1st. Because the Court erred in refusing to charge as requested in the first, second, third, fourth, fifth, sixth and seventh requests to charge.

2d. Because the Court erred in the reason given for his refusals to charge as requested, that reason being that the city could not delegate its right, power and duty to keep the street in repair, there being, it is respectfully submitted, no such delegation of right, power and duty involved in the law or the facts of this case.

3d. Because the Court erred in saying to the jury that perhaps if there had been lights the horse would not have stumbled, this in reply to the seventh request to charge, which was, that if the jury should find under the evidence that the injury was occasioned by the stumbling of the horse, and not because there were no lights, the city would not be liable. The plaintiff in error submits that this was an expression of opinion on the evidence, which is error.

4th. Because the Court erred in instructing the jury that in estimating the damages they could take into consideration the expense to which plaintiff had been put in and about his suit, thus leaving the jury to find a fact in regard to which there was not a particle of testimony.

The motion was overruled and a new trial refused. Whereupon the defendant excepted upon each of the grounds aforesaid.

W. B. FLEMING, for plaintiff in error.

THOMAS R. MILLS; RUFUS E. LESTER, for defendant submitted the following brief:

1. The city of Savannah is charged with the duty of keeping the streets in safe condition and of abating nuisances therein: See Code, sec. 4751; Mayor and Aldermen vs. Cullens, 38 Ga., 346; Savannah, Albany and Atlantic & Gulf R. R. vs. Shields, 33 Ga., 614; Shearman & Red. on Neg., sec.'133; Chicago vs. Robbins, 2 Black, 422; Storrs vs. Utica, 17 N. Y., 105; 3 Selden, 497.

2. The digging of a sewer, though a lawful act, and authorized by law, becomes a public nuisance, unless reasonable means be adopted for the safety of the public. To leave an open sewer in a street in a populous city is to neglect the public safety, unless lights or guards, or other means of safety or protection be adopted to warn against the danger: See Storrs vs. Utica, 17 N. Y., 105; Robbins vs. Chicago, 2 Black, 418; 4 Wall; Shearman & Red. on Neg., end of sec. 84. City requires lights, etc., from the citizen who digs sewers in the city: City Ordinances 1871, p. 472; 14 Barbour, 113.

3. For injuries sustained by such negligence, the party suffering the injuries is entitled to damages. It is contended on the other side that the work was put out by contract, and that where work is let out to an independent contractor, the party for whom the work is being done is relieved from responsibility for negligence. We reply: 1st. The contract does not make it the duty of McCrohan & Kirlin to adopt these means for the public safety, such as lights, fencing, etc., by night; they are, therefore, only responsible, if at all, for the safety of passers by whilst actually present and engaged in the work: See Buffalo vs. Holloway, 14 Barbour, 101–113; Storrs vs. Utica, 17 N. Y., 105; Shearman & Red. on Neg., sec. 83,

note (1.)   One cannot escape from an obligation imposed upon him by law by engaging for its performance by contract: Shearman & Red. on Neg., sec. 84.   2d. It is admitted that by the terms of the contract, the city reserved the right of supervising the work, and reserved certain rights over the contractors.   This makes the relation of McCrohan & Kirlin that of servants, not contractors: See 5 Ellis & Blackburn, 115.   3. If McCrohan & Kirlin really were contractors and not servants of the city, plaintiff in error is still responsible.

1st. Because McCrohan & Kirlin were not charged by the contract with the duty of putting up lights or otherwise guarding the public safety : See City of Buffalo *vs.* Holloway, 3 Seldon, 493 ; 14 Barbour, 114 and 113 ; Shearman & Red. on Neg., sec. 83 and 84.   Nor could this duty have been imposed on contractors so as to relieve the city from injuries done the public : Storrs *vs.* Utica, 17 N. Y., 105.

2d. Because the defect, *i. e.* the sewer, which occasioned the injury, was the direct result of the act which the contractor was employed to do.   When the injury is the direct result of the act which the contractor is employed to do, the employer is liable to injured party : Lowell *vs.* B. & L. R. R., 23, Pickering, 31 ; Hole *vs.* S. & S. R. R., 6; Hurlstone & Nor., 495 ; Robbins *vs.* Chicago, 4 Wallace, 678 and 679 ; Storrs *vs.* Utica, 17, N. Y., 104, (overruling and explaining Blake *vs.* Ferris, Pack *vs.* Mayor, etc., and Kelly *vs.* Mayor, etc.) pages 104 to 109.

If we are correct in our argument that the city cannot delegate, by contract, the duty of keeping the streets in repair and safe condition, so as to relieve themselves from liability for injuries done, then the 1st and 2d of requests to charge in Court below were entirely irrelevant and immaterial and properly refused, and the verdict ought to have been the same. Although a request to charge be pertinent and legal, yet if the verdict as rendered does substantial justice, a new trial should not be granted : See Ga. R. R. & Bkg. Co. *vs.* Scott, 37 Ga., page 94.

For a Judge to assume a fact to be true which is not con-

troverted, is not a violation of section 3183 of the Code of Georgia : See Whitty *vs.* the State, 38 Ga., 50 ; Phillips *vs.* Williams, 39 Ga., 597 ; 16 Ga., 368. (Marshall *vs.* Morris) construing Act of 1850—Cobb's Digest, 462—the Statute of 1850 is precisely the same as section 3183 of the Code. (It was conceded that there were no lights, and the expression of the Judge was merely a reason or illustration of the impropriety of the request to charge.)

Admitting, for sake of the argument, that the doctrine of *respondeat superior* does not apply in this case, still the right exists in this case against the city, because the wrong complained of does not consist in a violation of duty on the part of the contractor, but in a violation of duty on the part of the city in not keeping the streets free from nuisance and safe for travel, which was not within the scope of the employment of the contractor : Parker *vs.* the Mayor, etc., 39 Ga., 725.

TRIPPE, Judge.

1. The municipal authorities of the city of Savannah are by law vested with authority over the streets in the city, and with power to remove all nuisances, obstructions or erections, of any kind, along or upon any street, lane, way or place therein : New Code, section 4849. From this authority arises the obligation on them to keep the streets in a safe condition for public travel and use, and the consequent liability to a civil action by any person specially injured by neglect to discharge this specific duty : Dillon on Municipal Corporations, section 789. The same author, in his able and elaborate work on that subject, further says, in section 791, this duty " rests primarily as respects the public upon the corporation, and the obligation to discharge it cannot be evaded, suspended, or cast upon others by any act of its own." It has never been doubted but that the corporation is liable for injuries produced by the unsafe condition of the streets, and which were rendered so by its direct act or authority, when it was not acting through independent contractors : 39 Barb., 329; 1 Seld., 369; 4 Wall, 189. So, also, for neglect to keep the streets

in repair, even by the removal of dangerous defects occasioned by the wrongful acts of others : 39 Barb., *supra*, 9 N. Y., (5 Seld.,) 456 ; 2 Black, 422; 5 Dutcher, 544. It is true that this last position is qualified, and properly so, by the condition that in such cases it is necessary to show that the corporation had notice, or that the circumstances were such as to charge it with notice of the defect which caused the damage. This principle is essential to secure the safety of the streets and the protection of the public. Were it not so, there would be no guaranty for the repair of any defect or the removal of any obstruction, however dangerous, which any trespasser might wantonly place in the streets. If such a trespasser were to dig a dangerous excavation in or across a street, he, it is true, might be liable for damages caused thereby. But it would be of little satisfaction to the public to feel that they could only have recourse on some private party, probably insolvent, possibly unknown. The only reasonable and safe rule is, as has been so often held, that the duty resting on the corporation to keep the streets safe and in repair, carries with it, inevitably, the obligation to protect the public against danger from such obstructions by their removal, or by abating them with reasonable diligence. If this be so, does it not furnish a test to determine the whole question as to the liability of the corporation in this case? Granting that the corporation did not sustain to the primary contractor, Van Horn, or to the sub-contractors, McCrohan & Kirlin, the relation of principal and agent, or of master and servant, still it may be liable. This concession may, of course, yield the question that its liability could be rested upon the principle of *respondeat superior*. Yet that does not necessarily relieve the city from responsibility. For if the corporation is liable for negligence in not protecting the public against dangers caused by a wrong-doer, why should it be excused from negligence in permitting dangerous obstructions created, at least, by its authority, though it may be by independent contractors, to hazard the safety of the street traveler.

Suppose the independent contractor to make a sewer across

a street, were only partially to execute the work, should dig a deep excavation in the street and abandon the job. Or suppose, by accident or death, after doing that much work, he could do no more. What would be the duty of the city? Could it remain inactive and leave the excavation open until the representative of its independent contractor could be appointed, after, it might be, a considerable lapse of time, and claim immunity because the work was not being done by its own servant or agent, for whose default it could only be held responsible? No one would contend that such is the law. Still less could it be maintained that, in the case of an abandonment of the work by the contractor, the corporation had the right to permit it to remain permanently in the condition it was left. It will be admitted at once that it would be the duty of the proper authorities, with due diligence, to have the work completed by a new undertaking, or to have the excavation filled without delay. How, then, can it be said that a corporation may, by engaging a contractor who is not subject to its authority and control, be relieved from its liability, and permit the public to be exposed to dangerous obstructions placed in the streets and negligently left, without proper barriers or signals to give warning to those who may be compelled to travel the streets?

The duty and liability resting on a municipal corporation in such cases is deducible from the authority vested in it over the streets, and the obligation flowing therefrom, to protect the public against nuisances or dangerous obstructions in the highways of the city. And Judge DILLON, in his work already quoted, says, in section 792, that the doctrine of *respondeat superior* does not apply where the contract directly requires the performance of a work intrinsically dangerous, however skillfully performed. In such a case, the party authorizing the work is justly regarded as the author of the mischief resulting from it, whether he does the work himself or lets it out by contract. To the same purport are also the decisions in 17 New York, 104; 7 New York, (3 Selden,) 493, and in numerous other cases.

In *Parker vs. The Mayor and Council of Macon*, 39 *Georgia*, 725, it was held that, under the power conferred on the Mayor and City Council over the streets, lanes, etc., they are bound to keep them in such condition that it is safe and convenient to pass them, and in case of failure, they are liable to any person injured by their neglect. In the same case, it was further held that they were liable to a person injured by the fall of a high brick wall of a burnt house, on private property, at the line of the sidewalk, if they were negligent in the discharge of their duty to have the wall abated or made secure.

Upon principle and authority, we hold that if the builders of the sewer in this case, negligently left it unguarded, by not having proper barriers, or lights, or other protection against danger, and it was so permitted to continue for an unreasonable or unnecessary time by the municipal authorities, who had notice, or there are facts from which notice could be reasonably inferred, they are liable for injuries resulting from such neglect to perform their duty. This general principle covers all the questions raised in the motion for a new trial touching this question, and it is not, therefore, necessary to notice them in detail.

2. We think the Court erred in the charge to the jury, in saying, "that in estimating the damages, they could take into consideration the expenses to which plaintiff had been put in and about his suit." There was no evidence of what was such expense. If any, it could have been shown what it was. A plaintiff cannot claim for what is capable of almost exact proof, without furnishing the jury some testimony to arrive at the measure or amount of the claim. Proof of what are the physician's bill, and other expenses growing out of damage received, is always required to entitle a recovery therefor. So it should be as to the expenses referred to in this part of the charge. Such expenses are only recoverable " when the defendant has acted in bad faith, or has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense:" New Code, section 2942. As it is impossible to tell how this charge may have affected the amount given in the

verdict, and as it was calculated to, and probably did, cause the jury to increase the amount of damages rendered, we are compelled to order a new trial, and to reverse the judgment of the Court refusing it.

Judgment reversed.