# Davis *v.* City Council of Montgomery.

*Action against Municipal Corporation, for Damages caused by Accidental Fire.*

*Liability of municipal corporation for failure to abate nuisance.* — An action on the case does not lie against a municipal corporation, to recover damages for the destruction of a house, which was accidentally burned down by sparks from a steam-engine used by the proprietor of an adjoining lot, although the engine might have been abated as a nuisance under the charter and ordinances of the corporation, and the corporate authorities had been notified of its dangerous character, and had failed to abate it.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JAMES Q. SMITH.

This action was brought by Mrs. Rebecca Davis, against the city of Montgomery, to recover damages for the destruction of her house, which was accidentally burned down, in April, 1870, by sparks and fire communicated from a steam-engine used and owned on an adjoining lot by one R. W. Sharp. The original complaint contained but a single count, which alleged the plaintiff's ownership of the house, and of the lot on which it was situated, with the value of the annual rent; the erection and use of the steam-engine on the adjoining lot by said R. W. Sharp; the destruction of plaintiff's house by sparks and fire communicated from said engine; the creation of the defendant as a municipal corporation, by act of the general assembly of Alabama, with certain rights, privileges, and immunities, including the power to abate nuisances, which powers, &c., were vested in said corporation for the benefit of its citizens, and to

enable it to protect them against all danger and damages from all nuisances within the city ; the acceptance of the charter by the corporation, its exercise of the powers conferred, and its consequent duty to prevent and abate all nuisances ; the passage of certain ordinances, by the corporate authorities, as authorized by the charter, defining and declaring nuisances within the city limits, and providing for their removal and abatement ; notice to the officers of the city that the said steam-engine, as used by said Sharp, was a nuisance as defined and declared by said ordinances ; a request to them by plaintiff to remove or abate said engine as a nuisance, and their failure and refusal to do so.

The city ordinances defining and declaring nuisances, and providing for their removal and abatement, as set out in the complaint, were as follows : " All chimneys, stoves, furnaces, or other fireplaces on any premises, liable to burn and endanger the property adjoining, are hereby declared to be nuisances ; and the owner or lessee of the premises shall repair or remove such chimney, stove, or furnace, according to the direction of the city council." " Any person, neglecting beyond a reasonable time to comply with the order of the city council, shall be fined ten dollars for each day such nuisance may continue." " Every person who shall make a tan-yard, slaughterhouse, or butcher-pen, or engage in any business which will endanger the adjoining property, or affect the comfort or health of the people, shall be fined twenty dollars for each day the nuisance shall continue." " If the owner of the nuisance shall fail to remove it, the city council shall order it to be abated, at the cost of the person causing the nuisance." " If the person causing the nuisance be insolvent, or unable to pay the cost of its removal, or absconds, then the costs of abating the nuisance shall be taxed against the property on which it is situated, and be collected at the same time and in the same manner as the annual taxes."

The averments of the complaint, as to the defendant's duty to abate and remove the said steam-engine as a nuisance, and liability for damages caused by the failure to do so, were in these words : " And whereas, also, on," &c., " the said defendant hath been, and still is, an incorporation created under and by virtue of the statute laws of this State, and invested with the powers, rights, immunities, and privileges in said statutes mentioned ; which powers," &c., " were so vested in said defendant for the purpose, among other things, of protecting and securing the people of said city of Montgomery and their property from injury or damage from all nuisances in said city ; and the defendant had accepted the powers, rights, immunities, and privileges so vested in defendant by said stat-

utes, and has from thence hitherto, and still does claim, exercise, and enjoy the said powers," &c. ; " and in consideration of said powers," &c., " so vested in and accepted by said defendant, the said defendant thereby became in duty bound, and from thence hitherto hath been, and still is in duty bound, to exercise all the said powers," &c., " so vested in said defendant by said statutes, for the purpose and end, among others, to prevent and remove all nuisances within the said city ; and that the said defendant, on " &c., did adopt the ordinances above set out, which are alleged to have been of full force and unrepealed at the time of the fire ; " by reason whereof it became and was the duty of said defendant to cause the said nuisance, to wit, the said steam-engine, chimney, furnace, and fireplace, to be repaired, so that the same would not endanger the adjoining property, or, if that could not be done, to cause the same to be abated. Nevertheless, the said defendant, having notice of, and well knowing of the erection of said steam-engine, chimney, furnace, and fireplace at the time the same was erected, and having full notice and knowledge of its continuance, and of its proximity to the property of said plaintiff and other persons, and that the same was erected and used by said Sharp for the burning of wood, chips," &c., " and that the property of plaintiff and others was thereby in danger of being burned, by the sparks," &c., " proceeding from said engine," &c., " and that the said steam-engine," &c., " so used by said Sharp, was a nuisance, but contriving " &c. to injure plaintiff, " contrary to the duties and obligations resting on defendant by virtue and in consideration of its acceptance of the said powers," &c., " and of the exercise and enjoyment thereof by the defendant, wrongfully and unjustly suffered and permitted the said steam-engine," &c., to be used by said Sharp, thereby greatly endangering plaintiff's property ; " of all which the said defendant had notice," &c.

The court sustained a demurrer to the original complaint, and an amended count was then added, containing more specific averments of notice to the defendant, and a request to the mayor and marshal of the city to abate or remove the steam-engine as a nuisance ; and a demurrer having been also sustained to the amended complaint, the plaintiff declined to proceed further, and judgment was rendered for the defendant. The judgment on the demurrers is now assigned as error.

R. M. WILLIAMSON, with whom were FITZPATRICK & GOLDTHWAITE, for appellant. — The liability of a municipal corporation for torts committed by its agents, and for omissions on their part to perform duties assumed by the corporation, and imposed on its agents by ordinance, has been the subject of

[Davis v. City Council of Montgomery.]

much conflicting decision in this country. In some cases, this conflict is more apparent than real; in others, it is the result of not giving proper attention to the distinction, which very clearly exists, between the right to exercise powers conferred on the corporation, and the duties it assumes by the acceptance of its charter and the exercise of those powers. The only difficulty arises from the mixed character of a municipal corporation; it being at once a legislative and judicial body, and a ministerial agent of the sovereignty of the State for the performance of the duties imposed on it by its charter, or assumed by it in the exercise of the powers granted. Its duties are not arbitrarily imposed on it. "The grant of the corporate franchise is usually made at the request of the citizens to be incorporated; and it is justly assumed that it confers what to them is a valuable privilege. This privilege is a consideration for the duties which the charter imposes." Cooley on Stat. Lim. 247. There is also a clear distinction, which is sometimes lost sight of, between municipal corporations proper, and *quasi* corporations to whom, for public convenience, the exercise of some governmental powers within prescribed boundaries is committed by statute, variously known as townships, towns, school districts, &c. These *quasi* corporations are created by general laws, without consulting the people within their respective limits; and they are not liable in a civil suit for a failure to perform their public duties, or the improper performance of them, unless such liability is expressly created by the statute. The principles to be deduced from the adjudged cases, in reference to the liability of a municipal corporation, are these: 1. It is not liable, first, for a wrong or mistake in acting or not acting in its governmental character; nor, second, for a mistaken or unwise action done by it while acting as a judicial body; nor, third, for acts done in its public capacity as a governing agency in the discharge of duties imposed for the public good. 2. But it is liable, first, for acts of misfeasance, positively injurious to individuals, done by its officers or agents in the performance of corporate powers, or in the execution of corporate duties; and, second, for the neglect or omission to perform an absolute and perfect corporate duty, as distinguished from a discretional *quasi* judicial or imperfect duty. Dillon on Municipal Corporations, § 764.

In this case, the defendant's charter conferred on it express power to do and perform all acts incident to bodies corporate; to make, alter, lay out, or ascertain streets and alleys, and to keep them clean and in repair; to pass all necessary by-laws and ordinances, " to prevent and remove all nuisances at the expense of the person causing the same, or on whose property it may be found;" also, the power to tax all real and personal property

[Davis v. City Council of Montgomery.]

within its limits, and, generally, to pass all by-laws and ordinances necessary to carry these express powers into full effect. City Charter, 5th section. The charter does not positively enjoin the performance of any of these acts by the corporation as a duty; but it gives full power and authority to pass such ordinances as may be necessary to accomplish these objects; and the power, in each case, is conferred in similar or identical terms. Whenever a power is given to a corporation to do a particular thing for the benefit of the public, and exclusive privileges and immunities, or exemption from public burdens are also conferred on it, the power is imperative, and rests upon the corporation as a duty. If the corporation refuses to pass a by-law or ordinance to accomplish this object, it may be enforced by indictment or information at the instance of the sovereign; but a private individual has no remedy for such neglect, because the failure to pass the by-law or ordinance is a failure to perform a governmental act. Even this exemption from suit has been denied by high authority. *Mayor of Lynne v. Henley*, 1 Bing. N. C. 240; *Mayor v. Furze*, 3 Hill, N. Y. 617; *Cornell v. Ithaca*, 16 N. Y. 158. The result of all the well-considered authorities is, that when the necessary precedent governmental action has been had, by the passage or adoption of proper ordinances, the duty to execute those ordinances is a matter in which private individuals have an interest, and any one who is injured by the violation of that duty has his remedy by action. Here, the necessary governmental action was had, proper ordinances were adopted, and the complaint is of the neglect and tortious violation of duty in executing those ordinances. The liability of a municipal corporation for an injury, caused by such neglect or tortious violation of duty, in the matter of public streets or bridges, has been expressly declared by this court. *Smoot v. Mayor of Wetumpka*, 24 Ala. 112. Most of the cases have been suits for injuries arising from negligence in that particular matter, but the underlying principle is the same. The gist of the action is the duty to do a particular thing, a wilful neglect to do it, or doing it so negligently as to cause an injury to a person who has an interest in the performance of the duty.

Thus, in *Jones v. New Haven* (34 Conn. 1), the charter of the city authorized it " to make such by-laws as they should see fit relative to the cutting, breaking, or injuring of trees, and the protection and preservation of trees in the streets, highways, and public squares of the city." The city accepted the charter, and passed ordinances relative to the trees. The plaintiff was injured by a broken limb falling from one of the trees in the public square, and the court held that he was entitled to recover. " The city authorities not only had power to do this,"

[Davis v. City Council of Montgomery.]

*i. e.*, prune and remove the dead branches of the trees, " but that power vested in them exclusively. Their duty to do it would seem to follow as a necessary consequence."

A municipal corporation, it is said, " is not bound to provide for and secure a perfect execution of its by-laws." Dillon on Municipal Corporations, §§ 754–5. But this means, as the cases show, not that the city itself may wilfully refuse or neglect to perform the duties imposed by its own by-laws, but that it is not liable civilly for injuries caused by the violation of its by-laws by third persons. *Levy* v. *Mayor of New York*, 1 Sandf. 465; *Peck* v. *Austin*, 22 Texas, 261; *Cole* v. *Sneed*, 4 Sneed (Tenn.), 162. The distinction is well taken in the case last cited, where the plaintiff sought to recover damages from the city for the destruction of his house by gunpowder by one Jayne, a lunatic, who carried on the business of a druggist; a count which alleged that the mayor and aldermen, having knowledge of the facts, " took no measures to restrain or deprive the lunatic of the power to do mischief," was held bad; but another count which alleged that they, " having knowledge that said Jayne was a lunatic, granted him a license to engage in and carry on the business of a druggist within the limits of the corporation," was held good and sufficient. Whenever knowledge is shown, with wilful neglect, and consequent injury, the liability of the corporation is undoubted.

It is said, too, that a judicial determination was necessary to ascertain that this engine was a nuisance, and that the city is not liable for the neglect or refusal to make that judicial decision. But no judicial action was necessary in this case. The ordinance defined and declared the nuisance, and the duty of removing or abating it is clearly imposed upon the city council as the agent of the corporation. This duty is purely ministerial. Judicial duty is to hear and determine a particular *status*, and direct how judgment shall be executed; but to execute such judgment is purely ministerial.

ELMORE & GUNTER, *contra.* — A municipal corporation is not bound to provide or secure a perfect execution of its ordinances, nor for the neglect of its officers to enforce them. Dillon on Municipal Corporations, § 754; *Levy* v. *Mayor*, 1 Sandf. 465, 495; *Lorillard* v. *Monroe*, 11 N. Y. 396; *Griffin* v. *Mayor*, 9 N. Y. 456; *Peck* v. *Austin*, 22 Texas, 261; *Fowle* v. *Alexandria*, 3 Peters, 409; *Richardson* v. *Brooklyn*, 34 Barbour, 569; *Dewey* v. *Detroit*, 15 Mich. 307; *Vincennes* v. *Richards*, 23 Indiana, 381; *Wrightman* v. *Washington*, 1 Black, 39; *Howe* v. *New Orleans*, 12 La. Ann. R. 481; Shearm. & Redf. on Negligence, §§ 124, 127, 153; 2 Hilliard on Torts, 406, § 2 *a*. Nor is it liable for the failure to exercise discretionary powers

[Davis v. City Council of Montgomery.]

of a public or governmental, legislative or judicial character; nor for the manner in which in good faith it exercises those powers. Dillon on M. C. § 753; *Wilson* v. *Mayor*, 1 Denio, 595; *Cole* v. *Medina*, 27 Barbour, 218; *Lacover* v. *Mayor*, 3 Duer, 406; *White* v. *Yazoo City*, 27 Miss. 357; *Griffin* v. *Mayor*, 9 N. Y. 456; *Ely* v. *Rochester*, 26 Barbour, 133; *Dewey* v. *Detroit*, 18 Wisconsin, 83; *Joliet* v. *Verley*, 35 Illinois, 58; *Goodrich* v. *Chicago*, 20 Illinois, 445; 12 Ohio, 375; 35 Penn. 324; 14 La. Ann. R. 120; Cooley on Cons. Limitations, 208.

The complaint in this case shows a cause of action, if any, against Sharp, for an injury resulting from his use of his own private property on his own premises; which, if a nuisance as alleged, the plaintiff might have had removed or abated by indictment against said Sharp. So far as the city is concerned, the attempt is to make it liable for a failure to enforce its ordinances, — to declare and abate a nuisance; in other words, for a failure to exercise its governmental judicial powers. That this cannot be done, see the authorities above cited; also, *Smoot* v. *Mayor of Wetumpka*, 24 Ala. 119; *Prather* v. *City of Louisville*, 13 B. Monroe, 559; *Howe* v. *New Orleans*, 12 La. Ann. 481; *Bennett* v. *New Orleans*, 14 La. Ann. 120; *Western College* v. *Cleveland*, 12 Ohio St. 375; *Weightman* v. *Washington*, 1 Black, 49; *Yates* v. *Milwaukee*, 10 Wallace, 497; *Eastman* v. *Meredith*, 36 N. H. 296; *Dargan* v. *Mayor of Mobile*, 31 Ala. 469; *Gilmer* v. *City Council of Montgomery*, 32 Ala. 130; *Barbour County* v. *Brunson*, 36 Ala. 362; *Barbour County* v. *Horn*, 41 Ala. 114; Shear. & Redf. on Negligence, § 153. A steam-engine is not, of itself, a nuisance. Whether the improper use of it in any particular case makes it a nuisance, can only be determined by a judicial investigation. If the city officers can abate nuisances upon private property without a trial, why not leave them to execute the law in all cases without a trial, and without any legal formalities? What then becomes of the right of trial by jury, or the constitutional guaranty as to due process of law? Before the executive officers can, in any case, abate or remove a nuisance, an order for its abatement must be first made by the city council; and before such order can be made by the city council, it must judicially determine that the thing complained of is a nuisance.

PETERS, C. J. — In the case of *Smoot* v. *The Mayor, &c. of Wetumpka* (24 Ala. 112, 120), this court, speaking through the mouth of Chief Justice CHILTON, said: "It is too well settled, by an unbroken current of authorities for many years past, that an action on the case for a tort may be maintained

against corporations as against individuals, now to be contested." This opinion was delivered in 1854, and was pronounced in an action on the case against a municipal corporation, in which the corporation was held liable for injuries to the plaintiff, which had resulted from the failure of the city of Wetumpka to keep its streets in order for safe travel and passage of the people and their property. This duty the corporation had *assumed to perform*, upon such consideration in law as bound them to do it. The language of the act of incorporation declares, that "the inhabitants of the said city shall be excused from working on roads and highways out of the said city, and from patrol duty, except under authority of said city; but the streets and highways of said city shall be kept in repair by said city." Acts of Ala. 1839, p. 47, § 11. This puts the decision upon a principle that is clear and satisfactory. It is this: that the city corporation was bound to do what it had assumed to do upon a sufficient consideration. To be excused from the performance of one set of public duties, which were imposed alike upon all the people of the county and the State, the citizens of Wetumpka, under its city charter, had consented to discharge another set of public duties, of a more limited character. The corporation, then, as an individual would be, was bound to keep its pledges, or respond in damages for a failure. This important decision does not go beyond this. Thus far, it is a part of the law of the State, which has never been repealed. *Gelpcke* v. *City of Dubuque*, 1 Wall. 175; 16 How. 432. It is, therefore, binding on this court, unless reasons are shown sufficient to demonstrate its incorrectness. Nothing of this sort is attempted.

This decision limits the liability of municipal corporations, for torts, to a certain class of cases; that is, to those cases in which the corporation has stipulated to perform the duty insisted on, in consideration of being excused from the performance of other duties in its stead, or in consideration of the grant of the franchise itself. A corporation is but an artificial person, and, like a real person, it cannot be required to do what it never agreed or bound itself to do. The law only enforces such burdens as the citizen or corporation has agreed to bear on sufficient consideration to support such agreement; or such burdens as are imposed equally and alike on all, for the good of all, by the sovereign will of all, — by the law.

The complaint in this case is based on the proposition, that the city of Montgomery, under its charter, is bound to abate all nuisances within its limits, when notified of the existence of the same, or to pay to the citizen injured by their existence in property or person such damages as they may have occasioned him during such existence. If this is so, it must appear

from the act of incorporation itself; for this measures equally the powers and the responsibilities of the corporation. The liability grows out of a matter of contract, which the city has the power to make, or it is implied as a matter of duty assumed by the city in consideration of the grant of the franchise. I see no other ground upon which such an obligation can stand or be enforced. A corporation is an individual, created by law, and as an individual it must be judged. Angell & Ames on Corporations, pp. 1 *et seq.*, and cases there cited. Here, the matter of complaint is, that the plaintiff's house and out-houses on her lot were set on fire and destroyed by " sparks, fire, and burning wood, proceeding " from the " chimney, fireplace, and furnace " of a certain steam-engine belonging to a citizen of the city, erected and used by him as his own property, on his own premises, and under his own management in said city, near the lot and houses of the plaintiff, and over which the city corporation had no private right of control; because the house, within which the engine and chimney, fireplace and furnace were erected and used, was of such a character that it comes within the description of a *nuisance* as defined and declared in the city ordinances; in other words, that the city became liable, under its charter, for all injuries arising from nuisances of a certain kind, within its limits, which it failed to abate after notice of the same. I have not been able to find in what section of the charter this duty has been expressly imposed. Nor have I been able, on any settled principle, to infer its existence from any other duty so expressly imposed. I must therefore infer that it does not exist. From such a fire, under favorable circumstances, it is not impossible that the whole city may have been burned, and all the houses in it may have been destroyed; and as the city can only pay its liabilities by taxation, and taxes can only be levied on the property of the citizens within its boundaries, for such purposes, and taxes must be levied in proportion to the value of the property assessed, this would seem seriously to approach the proposition, that every owner should pay himself for his own house, which had been destroyed by a fire arising from a nuisance. Such a proposition, to my mind, seems too nearly to verge upon an absurdity to be accepted as sound law. If we proceed upon correct principle, we are not likely to run into confusion or absurdity. It may be said, in such case, we know the way in which we go, and are able to go safely. We go forward with the true balance of all our faculties. We walk with the eyes and the judgment, as well as with the feet.

A very ingenious and learned author, discussing the principles of pleadings, has declared that every complaint is founded on a proposition, in logical phraseology called a syllogism. Gould

on Pleadings, chap. 1, *ad finem.* The major proposition is the law of the case ; the middle proposition is the facts ; and the conclusion is the judgment of the court, applying the law of the case to the facts. If the major or the middle proposition is untrue, then the case must fail. The major proposition is tried upon demurrer by the court, or upon a charge to the jury, which is of like character. The charge is an impeachment before the judge presiding at the trial, of the truth of the major proposition. The decision on demurrer does not need a bill of exceptions to bring it up on appeal for review and correction, if it should be wrong ; it is a part of the record. The decision on the charge does. Rev. Code, § 2754. Yet the purpose and object of both are the same. Here, if I understand the complaint, which is not wholly free from some embarrassing prolixity, the major proposition is this : The city corporation of the city of Montgomery is liable for all damages occasioned by nuisances erected in said city, after notice of the same, if the corporate authorities or city government fail to abate it before the injury accrues. This is not the law, as declared in the charter, nor is it the law as deduced from principle ; and it is only in one of these ways that the city can be made liable. The abatement of a nuisance is a judicial act. For a failure to exert its judicial power, the city is not liable, unless, possibly, it acts not only negligently, but also corruptly. This principle is referred to and admitted by the learned chief justice of this court in the case of *Smoot* v. *The Mayor, &c. of Wetumpka, supra.* His words are these : " The principal difficulty we have had in this case, is in determining as to the nature of the liability of the defendant (city of Wetumpka) in respect to the failure of duty and negligence charged against it, considered with the law of its organization ; in other words, whether the duty alleged to have been negligently and tortiously violated grows out of, and forms a part of those powers, in the exercise of which the corporation acts as a legislative body, or whether such duty does not involve the exercise of *governmental* functions." The judicial power is a part of the governmental power. Const. Ala. Art. III. §§ 1, 2. In the exercise of such powers, the corporation is not bound to act, unless it chooses to act, if this choice is not corruptly made. 24 Ala. 120, 121, 112. This principle has been acknowledged and acted upon in all or most all of the highest courts of the States of the Union, in which such questions as that involved in the present case have been discussed and determined. *Detroit* v. *Blakely,* 21 Mich. 84 ; *S. C.* 4 Amer. R. 450 ; *Jewett* v. *The City of New Haven,* 38 Conn. 368 ; *S. C.* 9 Amer. R. 382 ; *Torbush* v. *City of Norwich,* 38 Conn. 225 ; *S. C.* 9 Amer. R. 395, and cases cited in appellee's brief.

[Blum v. Jones.]

The nuisance charged in the plaintiff's complaint would be, at common law, a private nuisance, remediable by suit in the plaintiff's name against the person erecting or continuing the nuisance. 7 Bac. Abr. Bouv. ed. pp. 223, 233; 1 Russ. on Crimes, pp. 317 *et seq.* But, by ordinance of the city government, it is made a public, or common nuisance, and it is remediable by indictment (1 Russ. on Crimes, 329); or, by action on the case after the injury (*Duncan* v. *Thwaite*, 3 B. & C. 584; 11 East, 60); or, before the injury, by bill in equity for injunction (2 Story's Eq. §§ 921, 924, 925, 926); but in no case by suit against the city corporation for a failure to abate the nuisance, unless, perhaps, it appeared that the corporation had acted corruptly and abused its powers, or this was required by the stipulations of the charter.

The judgment of the court below is affirmed.

