CANDICE E. GRANT v. CITY OF BRAINERD.[1]

May 2, 1902.

Nos. 12,925—(72).

**Municipal Corporation—Bridges.**

It is the duty of a municipality having control of its public thoroughfares to construct and maintain suitable approaches to its bridges intended for public travel, and to provide suitable barriers or guards thereon to prevent persons lawfully using such places from injury.

**Same—Barrier above Embankment.**

Evidence considered, and *held*, that it was a question for the jury whether the public authorities of a city had failed to perform their

[1] Reported in 90 N. W. 307.

full duty in the maintenance of barriers on the sides of an embankment used as a public highway leading to a bridge in a populous and well-settled portion thereof; also, whether such neglect was the proximate cause of plaintiff's injury.

Action in the district court for Crow Wing county to recover $5,050 for personal injuries caused by an alleged defective highway. The case was tried before Baxter, J., who directed a verdict in favor of defendant. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*W. A. Fleming*, for appellant.

*W. H. Crowell*, for respondent.

LOVELY, J.

Action for personal injuries sustained by appellant while driving a horse and buggy over one of the public highways of the city of Brainerd. At the close of the evidence a verdict was directed for defendant. This appeal is from a motion denying a new trial.

Florence street is one of the principal public highways of Brainerd, connecting the eastern and western divisions of that city by means of a bridge over the Mississippi river. At the time in question the city was quite thickly settled in this locality, and the highway to and over the bridge was generally used by pedestrians and travelers with teams having occasion to cross the same. The west end of the bridge rests upon an abutment rising above the river. The street at this end is connected with the bridge by means of an embankment of earth so constructed that there is a gradual incline from the level of the highway, by means of which travelers could gradually ascend a roadway upon such embankment until reaching the bridge. This way over the embankment is twenty-four feet in width. For some distance before it reaches the bridge there is a steep declivity on either side of twelve feet above the street. For several years before the accident no guards or barriers had been maintained by the public authorities on the sides of the embankment, who had during that time adopted and made use of it as a thoroughfare for public travel. On the afternoon of July 4, 1900, the plaintiff, with her daughter, was driving a horse and carriage from West Brainerd upon this part of Flor-

ence street intending to cross the river. The evidence tends to show that the horse was reasonably gentle, and that plaintiff had control of it until the time of the accident. As she was going upon the bridge, she was met by a party rapidly coming towards her on a bicycle, and her horse became frightened and backed. Her daughter succeeded in jumping from the buggy, but the horse continued to back towards the south side of the embankment; the plaintiff was unable to control its movements or extricate herself from difficulty before the horse and carriage were precipitated over the same, throwing her upon the ground, and inflicting serious injuries, for which she seeks recovery in this suit.

The facts above stated are amply sustained by the evidence, and it is therefore only necessary to determine whether, under the circumstances thus detailed, the order of the trial court directing a verdict for defendant was authorized.

The duty of a municipality to maintain its thoroughfares, including bridges and their approaches, in a reasonably safe condition for public use, and accommodation of travelers, has long been established and applied by the courts in this state. This obligation was fully recognized as including bridges in the case of Anderson v. City of St. Cloud, 79 Minn. 88, 81 N. W. 746, where it was held to be a municipal duty to maintain the ordinary highways for travel by men and teams in populous portions of the city. Embraced in this obligation is also the incidental function to maintain suitable barriers and guards when necessary at dangerous places. City of St. Paul v. Kuby, 8 Minn. 125 (154); Cleveland v. City of St. Paul, 18 Minn. 255 (279); O'Leary v. City of Mankato, 21 Minn. 65; Estelle v. Village of Lake Crystal, 27 Minn. 243, 6 N. W. 775; Ray v. City of St. Paul, 40 Minn. 458, 42 N. W. 297; Graham v. City of Albert Lea, 48 Minn. 201, 50 N. W. 1108; Weiser v. City of St. Paul, supra, page 26.

From the evidence submitted in this case we have no doubt that it was a question for the jury whether a fence or other barrier was required on the south side of the embankment, or would have prevented the catastrophe; that it was also a question whether the public authorities might reasonably anticipate the liability of

horses and teams to fright from the cause which occasioned the accident to plaintiff. If so, the failure to erect proper barriers or guards was the proximate cause of her injury, for which the municipality was liable; the principle being well settled that a wrongdoer is, at least, responsible for all injuries which result as a natural consequence from its misconduct, or might reasonably have been anticipated as likely to occur, and whether in a particular case the injury was such natural and proximate result of the wrong complained of is, ordinarily, for the determination of a jury. Griggs v. Fleckenstein, 14 Minn. 62 (81); Ransier v. Minneapolis & St. L. Ry. Co., 32 Minn. 331, 334, 20 N. W. 332, and cases cited.

McHugh v. City of St. Paul, 67 Minn. 441, 70 N. W. 5, is not applicable to the case at bar. In that action a traveler in the nighttime strayed from a reasonably safe highway outside of an unfenced street where the street itself was safe and convenient for travel. It was stated in the opinion in that case that the "facts showed conclusively that plaintiff was guilty of negligence." In this case we are unable to find evidence conclusively showing that plaintiff was wanting in ordinary care in her use of the highway or in driving her horse and carriage upon the bridge. Neither is the case of Tarras v. City of Winona, 71 Minn. 22, 73 N. W. 505, in point. It is clearly distinguishable from the facts in the record before us. In that case a horse driven by a traveler took fright without apparent cause, and backed entirely across a roadway thirty-three feet in width in an outlying portion of a city, which, the court say, was altogether similar to a country road. In this case the roadway at the point where plaintiff's horse took fright and backed down the embankment was in a populous and well-settled portion of the city. The traveled way was very narrow, even for ordinary travel; and if the danger was not so great as upon the bridge itself, where railings were undoubtedly required, the difference was in degree only, and it should have been left to the jury to determine whether the city was negligent in not properly maintaining such railings upon the approaches thereto.

Order reversed, and a new trial directed.