## HENRY SEEWALD v. EDWARD SCHMIDT and Others.[1]

November 27, 1914.

Nos. 18,725—(55).

**Contractor's negligence — liability for runaway.**

The defendants Madsen Brothers were operating a concrete mixer, for which a gasolene engine furnished the motive power, immediately adjacent to a public alley in the defendant city of Waseca, but not in the alley. The defendant Schmidt drove his team into the alley upon business and close to the engine. The horses became frightened and ran away and injured a horse of the plaintiff. It is *held:*

(1) That the defendant city was not liable.

[1] Reported in 149 N. W. 655.

---

Note.—As to the liability for placing near highway object calculated to frighten horse, see note in 12 L.R.A.(N.S.) 1152.

(2) That the evidence did not justify a finding of the jury that the defendant Schmidt was negligent.

(3) That the evidence justified a finding that the defendants Madsen Brothers were negligent.

(4) That whether their negligence was the proximate cause of the injury to the plaintiff's horse was for the jury.

(5) That the defendants cannot avail themselves of a variance between the pleading and proof first suggested on the appeal.

Action in the district court for Waseca county to recover $325 for injury to plaintiff's horse. The facts are stated in the opinion. The case was tried before Childress, J., who when plaintiff rested denied separate motions on the part of defendants to dismiss the action, and a jury which returned a verdict for $250 in favor of plaintiff. From an order denying their separate motions for a new trial, defendants appealed. Reversed as to defendants city and Schmidt and affirmed as to defendants Madsen.

*P. McGovern, F. G. Kiesler* and *James C. Melville,* for appellants. *Moonan & Moonan,* for respondent.

DIBELL, C.

Separate appeals by the defendants from orders of the court denying their motions for a new trial after a verdict for the plaintiff.

The defendants Madsen Brothers were engaged in the construction of a building in the city of Waseca fronting at the west on Second street and extending easterly to within a few feet of an alley some 20 feet in width. This alley extended through the block from the street at the south to the one at the north. The building in process of erection was toward the north of the block. In doing their work the defendants were using a concrete mixer operated by a gasolene engine. The defendant Schmidt, a farmer residing some seven miles from the city, drove into the southerly end of the alley proceeding northward with a lumber wagon and a somewhat spirited or skittish team. He had some harness which he purposed leaving for repair at a harness shop just south of the concrete mixer. The concrete mixer and gasolene engine were close to the alley but not in it. The defendant stopped his team when he reached the harness shop, jumped

out, holding to the lines. Just then the team became frightened, turned around to the right and to the south, got away from him, and ran into and injured a horse of the plaintiff.

The verdict was against all three defendants.

1. The city is not liable. The concrete mixer was not in the alley. There was building material, used by Madsen Brothers, in the alley; but the obstruction resulting from it had no causal connection with the runaway.

There is nothing in the case of City of Winona v. Botzet, 169 Fed. 321, 94 C. C. A. 563, 23 L.R.A. (N.S.) 204, cited by the respondents, nor in the cases cited therein, suggesting a liability on the part of the city. In that case a team was frightened by a blast of the whistle of the city waterworks.

The cases hold that under certain circumstances a city is negligent in failing to guard a street by barriers against pitfalls or dangers on adjoining private property. Grant v. City of Brainerd, 86 Minn. 126, 90 N. W. 307, and cases cited. This is merely a matter of keeping the streets safe. In some cases it is held that a city may be liable for injuries sustained by travelers on the street from the fall of adjacent buildings or walls which have become dangerous to the public, and which the city has charter authority to abate, though they are privately owned and are on private property. The rule has been stated as follows:

"Municipal corporations to whom the state has delegated ample power to abate common nuisances are bound to exercise that power for the removal of such of them as they know, either actually or constructively, to exist. This duty, it seems, is positive." Williams, Municipal Liab. Tort, § 186.

If there is liability it should be confined to injuries sustained by a traveler on the streets.

"A failure by the corporation to exercise its charter power to abate nuisances not rendering its streets unsafe does not give a person who is injured by such failure a private action against the corporation." 4 Dillon, Mun. Corp. § 1628.

This limitation is illustrated by Davis v. City of Montgomery, 51 Ala. 139, 23 Am. Rep. 545; Cain v. City of Syracuse, 95 N. Y. 83.

So it has been held that a city is liable for injuries sustained by one in a street caused by the falling of burned walls of a building standing upon adjacent premises of private persons where they constituted .a nuisance. Parker v. City of Macon, 39 Ga. 725, 99 Am. Dec. 486; ·City of Savannah v. Waldner, 49 Ga. 316; Kiley v. Kansas City, 87 Mo. 103, 56 Am. Rep. 443; Grogan v. Broadway Foundry Co. 87 Mo. 321. The principle sustaining such liability has been denied. .Howe v. City of New Orleans, 12 La. Ann. 481; Hixon v. City of .Lowell, 13 Gray, 59. In Lincoln v. City of Boston, 148 Mass. 578, ·20 N. E. 329, 3 L.R.A. 257, 12 Am. St. 601, the court said that ·"noises outside the limits of the highway amounting to a public nui-:sance are not a statutory defect in the way."

It is not necessary to determine the correct rule or the limits of its .application. There was not a nuisance which could be abated by the ·city. At most there was negligence in the operation of the engine and mixer. There is no principle of law upon which liability on the part of the city can be rested.

2. The evidence was not such as to justify a finding that defendant .Schmidt was negligent. He drove into the alley from the street south ·of the block and some distance from the engine. He knew that the :theater building was being constructed. There is evidence that when .he got into the alley he saw the mixer and knew that the engine was running. The evidence is that the exhaust of the engine could be .heard for some distance. The character of the noise depended upon .the amount of material being fed into the mixer. It was more or less .intermittent. Schmidt was driving a lumber wagon, the ground was .frozen, and the wagon made some noise. His team was young and :spirited and needed careful control. He was in pursuit of his busi-:ness and making use of the public alley to reach the harness shop. The character of his team was not such that he was precluded from :using it in his ordinary business when in town. He was not lacking in care in driving. He held to the lines and was dragged until they ·broke. Viewing the question of liability from a practical, common-sense standpoint, a jury should not be allowed to find that one using .a team as the defendant was using his, driving with the care he was .exercising, though his team was spirited and somewhat unused to the

noises of a busy town, was negligent. Such a burden of liability is too onerous.

3. It is claimed that the defendants Madsen Brothers were negligent in not sufficiently muffling the exhaust of the engine. The muffler was attached to the engine. The claim is that the defendants should have attached a pipe of some length to the exhaust, attached the muffler to the end of it, and thereby such noise as there was would have been at a greater distance from the alley. There is some evidence that because of the noise of the engine trouble was had with the teams which were hauling material for the building.

A majority of the court are of the opinion that the question of the negligence of defendants Madsen Brothers was for the jury.

The alley was narrow and was much in use by the public. The farmers used it to unload their produce at the rear of the stores and to load their supplies. The merchants used it to receive their freight and to load out their merchandise. The mixer, while not in the alley, was immediately adjacent to it. The view that the defendants may be held liable finds support in Wolf v. Des Moines Elevator Co. 126 Iowa, 659, 98 N. W. 301, 102 N. W. 517. There the exhaust pipe from a gasolene engine used in connection with a grain elevator extended through the roof of the engine room and was about 40 feet from the traveled way. It seems that the muffler was defective. The court refers to the fact that an extension of the exhaust pipe might have been made, or that the engine might have been made to exhaust into a vat of water, and the noise thereby lessened. In the course of its opinion the court said:

"The basic principle upon which the doctrine of all the cases is bottomed is found in the maxim old as the books, in substance, that no man shall make use of his own property in such manner as to unreasonably interfere with the enjoyment on the part of others of the rights conferred upon them by law. Of necessity it follows that in each individual case the question must resolve itself to this: Was the use being made of the adjacent property such in character as to be an unnecessary interference with or unnecessarily dangerous to persons making lawful use of the street or highway? And whether or not improper use amounting to negligence has been made to appear in

any given case is generally a question to be determined by the jury. Taking the facts as shown by the record in the instant case, we think it cannot be doubted but that the elevator was located at a place where it might properly be. So, too, as we think, the use of a gasolene engine in connection with the operation of such elevator was proper and lawful, and cannot therefore be said to have been per se negligent. The use of gasolene in the creation of motive power has become general throughout the country, not only in the operation of mills and factories, but as well for the purposes of locomotion, and there can be no grounds upon which to predicate at this time a holding that such use is in and of itself wrongful. As in the use of steam and electricity, it becomes wrongful only when the use is attended with negligence."

Applying the reasoning of that case we hold that the jury could find negligence in Madsen Brothers.

4. Whether the negligence of the defendants Madsen Brothers was the proximate cause of the injury to the plaintiff's horse was at least for the jury. Griggs v. Fleckenstein, 14 Minn. 62 (81), and cases cited thereto in 1 Notes on Minn. Reports, 556.

5. The complaint alleged that the engine and mixer were in the alley and that the defendant Schmidt left his team in the alley unhitched. The questions of negligence already discussed were litigated without objection. The claim of a variance is now for the first time made. It is too late. Johnson v. Avery, 41 Minn. 485, 43 N. W. 340; Lemon v. DeWolf, 89 Minn. 465, 95 N. W. 316; Raitila v. Consumers Ore Co. 107 Minn. 91, 119 N. W. 490.

Other assignments of error do not require specific mention. They have been considered.

Reversed as to defendants city of Waseca and Schmidt and affirmed as to defendants Madsen Brothers.