## MILES CARROLL

### *vs.*

## THE MINNESOTA VALLEY RAILROAD COMPANY.

1. Sufficiency of testimony to sustain the verdict in this case considered.

2. The rule that negligence and ordinary care and prudence are in general, matters for determination by a jury, applied to the facts and circumstances of this case.

3. If in doing that which it is his right to do in the discharge of duty, a person exercises ordinary care and prudence, he is not chargeable with negligence, notwithstanding as the result showed he imperiled his life or personal safety in so doing.

The plaintiff was an employee of the N. W. U. Packet Company, on the steamboat Mollie Mohler, which was engaged in carrying passengers and freight on the Minnesota river from Belle Plaine, where it connected with defendant's railroad, to Mankato and intermediate points. About the 15th of June, 1867, the water in the river being high, the steamboat was moored alongside a branch track of the defendant's road at Belle Plaine, to receive and discharge passengers and freight; for that purpose its staging or landing plank was run out over the railroad track. A car was standing on the track on one side of the staging, and while the plaintiff was on the other side, engaged in removing the staging from the track with his back to a train of cars, the train backed down, and he was caught between two cars. He brought this suit in the Court of Common Pleas for Ramsey County to recover

damages for the injuries sustained. Upon a new trial, which was awarded the defendant on an appeal to this Court, (see 13 *Minn. Rep.*, 30) the jury found a verdict for the plaintiff for $1,500. The defendant again appeals to this Court. The evidence adduced on the trial, and the questions raised by counsel, sufficiently appear in the opinion of the Court.

ALLIS, GILFILLAN & WILLIAMS for Appellant.

I. V. D. HEARD for Respondent.

*By the Court*—BERRY, J—This action was before this Court on a former occasion, when a new trial was granted, on the ground that the verdict was against evidence, in that it appeared that the plaintiff himself contributed by his own negligence to the injury complained of. The case is reported in 13 *Minn.* 30. Upon the new trial substantially the same testimony was introduced as upon the first trial, with some additional testimony having a bearing upon the question of the plaintiff's negligence. The plaintiff obtained a verdict for $1500, which the defendant insists cannot be sustained, because it appears from the evidence in the case, that the plaintiff contributed to the injury by his own negligence. It is undisputed that the boat Mollie Mohler, on which the plaintiff was employed as carpenter, was moored alongside of a side track of the defendant's railroad to receive and discharge passengers and freight, and that for that purpose its staging was run out over the side track; that there was a loose box car on the track below the staging, and an engine, tender and two box cars in a train on the track above the staging; that the train came down the side track within a few feet of the staging, and then ran up the track a

Carroll v. The Minnesota Valley Railroad Company.

short distance and stopped; that it came down a second time and struck the staging, and shoved it against the car below; that the train then ran up the track again a short distance and stopped, and that while so running up the hindmost car of the train uncoupled, and stood upon the track eight or ten feet above the staging; that the plaintiff then went upon the track for the purpose of removing the staging, and while standing upon the track with his back to the train, engaged in attempting to remove the staging, the train came down a third time, the uncoupled car struck the staging, and the plaintiff was caught between the car and the staging, and severely injured.

It is also undisputed that the train came down the three times in the course of ten minutes, and that no bell was rung at either time. It was also undisputed, and testified by the plaintiff, that the grade above the boat was steep, a short distance above very steep, and that owing to high water the boat was unable to land at the usual public landing, and for several days had moored at the place where it was at the time the plaintiff was injured, without objection. It was also undisputed, that it was the plaintiff's duty as carpenter to look after the staging, and that he with others made an attempt to haul it in standing upon the boat, but could not succeed in doing so, because one jaw of the staging was wedged under a rail of the track; that he ran out on the staging to turn it on its edge, so that it could be hauled in; that while he was in the act of lifting it, he was struck as before stated. The plaintiff testified, that he supposed if he did not remove the staging the train would come down again and break it up; that he did not suppose the train would come down while he was on the track; that the car below had the brakes on; that he could easily have taken the brakes off, could have done it in a minute, and

then one man could have pushed it out of the way; that he made no effort to get it out of the way; that the staging being pressed against the car below it, and wedged fast under a rail of the track, it was necessary to turn it on its edge in order to extricate it, and that he could not turn it without standing upon the track with his back to the train; that he could not have seen the engineer if he had faced towards him; that he could not have seen anybody on the train while he was on the track, because of the box car standing loose above the staging; that it was impossible for any one on the train to see him on the track; that the cars ran very slowly when they came down the second and third times; that he had been there about a minute when he was hit, and that the grade made it more dangerous to be on the track than it otherwise would have been. It appears then that the plaintiff knowing that the train was on a steep grade; that it had backed down twice within a few minutes striking the staging the second time, and leaving an uncoupled car only eight or ten feet above the staging, the rest of the train stopping a short distance above; seeing the staging pressed against the car below, and wedged fast under the rail, and expecting that if the staging was not removed the train would come down and crush it; knowing that no bell had been rung at either the first or second time when the train came down, placed himself on the track in a position where he could not see the engineer, nor the engineer him, with his back to the train, for the purpose of removing and saving the staging of the boat. Now under this state of facts we think that the plaintiff would have been chargeable with inexcusable negligence, if he had placed himself in the position testified to, unless he either *in fact* notified those in charge of the train that he intended to place himself in such position, or unless having taken

reasonable care to so notify them he had good reason to believe, and did believe, that they were so notified.

The testimony as to giving notice is as follows: The plaintiff testifies that after the train came down the second time, " I (plaintiff) stood on the head of the boat, and called to the captain, and mate, who were both beside the locomotive and tender. The station master and assistant station master were on the shore ; they were close to the engine, close enough to converse with the captain. I called to the people on the shore that our staging was being broken up, and in order to save it, it was necessary to take it on board. I also said there were obstructions on the track which would prevent the car below the staging being taken away. The engine was standing still at the time. I could see the engine quite plainly and a man in the cab that I thought was the engineer. I saw Captain Holmes address himself to the man in the cab. At this time I got orders from the mate to haul the staging in. I saw Captain Holmes speak to the engineer when he was standing beside the engine. The captain did not say anything to me while he was standing beside the engine. The mate spoke to me. He was standing six or eight feet from the engine. There was the tender, two box cars and a space of about sixty feet between me and the engine. The engineer was on the engine. I could see a man on the cab whom I supposed to be the engineer. I called to the mate and captain, telling them that our staging was being injured, and to take means to see that the engine would not back down while I went to extricate it. I saw the captain address himself to the man on the engine. " And again on cross-examination the plaintiff testified : " I hallooed to the people on the shore, the railroad officials and others, and our captain and mate, and asked what they were trying to do by backing down and

running ahead; some one said they were trying to hook on the car which was standing on the track below the staging; I then shouted as loud as I could that they could not couple it on, because our staging held the cars further apart than their bumpers would reach, but if the bumpers would reach they would break our staging in two or crush it."

Harry W. Holmes, captain of the boat, and a witness, whose deposition was read on behalf of the plaintiff, testified that " after they backed down I waived them to hold on. I think I told them so the first time, but am sure I told them the second time; one time when I called I was right alongside the tender; the engineer gave no indication of hearing or not hearing me; I supposed he would hear me."

Upon this testimony we are of opinion that it was for the jury to determine whether the plaintiff had exercised reasonable care in placing himself upon the track; whether he had in fact notified those in charge of the train of his intention to do so, or whether he had taken reasonable care to so notify them, and had good reason to believe, and did believe that they were so notified. And in determining these questions we think it was important to be considered that (as the evidence tends to show) the plaintiff, who appears to have been sensible of the danger, and of the necessity of giving notice to the persons in charge of the train, *actually placed himself upon the track in the position described.* This would seem to afford no slight ground for inferring that he acted under the belief that the notice which he had given, or attempted to give, had reached those for whom it was intended, and that they would govern themselves accordingly. To suppose that he acted without this belief would be to impute to him a foolhardy disregard of his personal safety, if not a suicidal recklessness of life.

Carroll v. The Minnesota Valley Railroad Company.

We cannot say that the testimony in the case was insufficient to justify the jury in arriving at the conclusion that the plaintiff was not guilty of negligence contributory to the injury, but that he exercised ordinary and reasonable care in placing himself upon the track.

The defendant requested the Court to charge the jury that "if he (plaintiff) placed himself on the track with his back to the train in such a way that he could not see the train, and the engineer could not see him, and he gave no notice to those in charge of the train that he intended to place himself there, or that he was there, then he was guilty of negligence." The Court refused to charge as requested, but charged "that generally such facts would constitute negligence, and would here unless circumstances should show necessity, or excuse for plaintiff's so doing." The defendant excepted to the refusal to charge and to the charge as given. We are of opinion that the exception is not well taken. As already intimated, it was not necessary that the plaintiff should actually have given notice of his intention to place himself upon the track. If he attempted to give notice, or used reasonable care to do so, and had good reason to believe, and did believe, that those in charge of the train were notified of his intention to place himself upon the track, we are of opinion that it cannot be laid down as a matter of law that he was guilty of negligence, even if those in charge of the train were not in fact so notified. Under such circumstances the question of negligence is to be submitted to a jury for their decision, and negligence on the part of defendant being shown, they may properly determine that the plaintiff was excusable for placing himself upon the track without giving actual notice of his intention to do so.

The defendant also requested the Court to charge that

"the saving or removing the staging, under the circum-
stances, was not in law an adequate reason or excuse for
plaintiff placing himself where his life or personal safety
was imperiled." The Court refused so to charge, but
charged, "that such saving or removing was not an ade-
quate reason for plaintiff to neglect to use ordinary care and
prudence. The question is did he use ordinary care and
prudence in attempting to save it."

The defendant excepted to the charge and refusal to
charge, but we think the exception untenable. The plain-
tiff certainly had the right, and it was his duty to save and
remove the staging, though he must do so in the exercise
of ordinary care, and not negligently. But placing himself
where his life or personal safety were imperiled, would not
necessarily constitute negligence on the part of the plaintiff.
In the exercise of very great care and prudence, he might
have placed himself where his life and person were imper-
iled *as a matter of fact*, and yet he would not have been
chargeable with negligence. It is not then the *fact* that he
imperiled his life or person that fixes negligence upon him.
The question is did he believe, or had he reason to believe,
that he was so imperiling his life or person, or in another
form, did he exercise ordinary care and prudence in doing
that by which, as it turned out, he as a matter of fact im-
periled his life and person? If he exercised such care and
prudence, then the saving or removing of the staging was,
under the circumstances, an adequate reason for doing what
he did, notwithstanding by so doing he, as the result showed,
imperiled his life or personal safety.

This disposes of all the matters to which our attention is
called, and the result is, that the judgment is affirmed.