Bradbury, J.
The defendant in error, in June, 1885, while passing along one of the streets in East Toledo, stopped at a point where the track of the railway of plaintiff in error crossed the'street, and engaged in conversation with a woman who had in charge two children, one an infant in arms, the other a girl about four years old. The plaintiff in error had constructed a safety gate at this point, and during the greater part of the day kept there a watchman to close the same when trains were approaching, as a warning to travelers. The accident that caused the injury occured about seven o’clock in the evening, or a little latter, but while it was yet light; the watchman had finished his day’s labor, and gone away, and the gate was raised (or open), though the street was, perhaps, as extensively used at that hour as at any other part of the day. A local freight train was past due, and approaching at a higher rate of speed than that prescribed by the ordinances of the city.
The defendant in error and the nurse were engaged in conversation at a point from which the approaching train was in view for a considerable distance, though exactly how far away it could be seen is left in some doubt. The little girl, while her nurse and defendant in error were conversing, wandered across the railroad track, and seeing or hearing the approaching train, became excited by the sight or noise, or both, and by clapping her hands and other manifestations of surprise and delight, attracted the attention of- her nurse certainly, and, probably, that of the defendant in error also. The nurse, excitedly, called the child to her, and while crossing the railroad track, in obedience to the call, it tripped *319 and fell in front of the rapidly approaching train, whereupon the defendant in error, observing its imminent peril, sprang to its rescue, caught it in his arms, and leaped onward, but was struck by the locomotive,before he could pass beyond its reach, and received the injuries of which he complains. That the safety gate was raised and the watchman absent,was not disputed at the trial, so far as the record discloses, and the evidence is amply sufficient to warrant the jury in finding that the train was being run at an unlawful rate of speed, so that in both these particulars the negligence of the railroad company was established.
It is contended, however, that the negligence of the railroad company should have related to the party injured, and that the jury in passing upon the case of the defendant in error, should not have taken into consideration the rights of the rescued child, but should have confined itself to considering the relations existing between him and the railroad company. And in this connection the plaintiff in error requested the court of common pleas to charge the jury as follows:
“ The plaintiff’s right to recover depends entirely upon the fact that the defendant was guilty of negligence in its relations to this plaintiff. The jury, in deliberating upon your verdict, must not consider the rights of the child. This action has nothing to do with her rights. The sole questions here are, was the defendant guilty of negligence which caused the plaintiff’s injuries, and was the plaintiff himself guilty óf contributory negligence ? ”
This request was properly refused. Negligence does not usually relate to any one in particular, and does not in any case so relate, unless there is some special duty owing to the individual affected by the negligent act or omission. In the case under review the railroad company owed no special duty to either the rescuer or the rescued, that it would not have owed to any individuals similarly situated; the obligation was to the public generally, and any person who, without fault on his part, received an injury in consequence of its failure to discharge this obligation, may recover from it *320 compensation therefor. No other relation is necessary, where the obligation is to the public, than that the one, by its negligence, has caused injury to the other without the latter’s fault.
It is also objectionable in another particular, that of requiring the jury to ignore the rights of the child. It is true that the child in its relations to the railioad company might have, a right of action for injuries received by it, and yet no right accrue to the defendant in error for those received by him in the same accident. The circumstance that the child had a right of action could not be conclusive that the defendant in error had one also, though the same blow of the locomotive injured both, for the negligence of the latter might contribute to the result in a manner to defeat his recovery, while no negligence could be imputed to the child. If it was the object of this request to impress upon the minds of the jury the proposition above stated, that the rights of action of the child and its rescuer against the railroad company were distinct, the language selected was not well chosen. The phrase, “ The jury, in deliberating on your verdict, must not consider the rights of the child. This action has nothing to do with her rights,” was well adapted to mislead the jury into the belief that the imminent danger of the child, and its right to be rescued therefrom, were to be excluded from their consideration. This view would have defeated the recovery, for the very ground upon which the defendant in error founded his claim, was that the imminent peril of the child warranted the risk he assumed in undertaking its rescue.
This brings us to the consideration of the main question. Plaintiff in error contends that it was negligence per se for the defendant in error to throw himself in front of a moving train in his. effort to rescue the child from danger.
The petition of the plaintiff below discloses that he received the injury of which he complained, by voluntarily passing in front of a moving train to rescue a child, who had fallen in fpont of it; therefore.if such an act is negligence per se the petition disclosed that the negligence of the plaintiff below, contributed to the injury and he was not entitled to maintain *321 an action therefor. The same question was raised by an exception taken to the following part of the charge of the court:
“ It appears that the plaintiff was struck by the engine and injured while in the act of passing across the track and rescuing a little child from danger and saving its life. To hold the railroad company responsible in damages for this injury, it must be shown, (1) that the child was in danger of being run over and injured by the approaching engine, and that such danger was caused or created by the negligence of the railroad company; and (2) that in making the effort to rescue the child the plaintiff was not guilty of contributory negligence. These are questions of fact which will be your duty to determine from the evidence.....
“If you find that the peril to which the'child was exposed was caused by such negligence of the company, you will then inquire whether the plaintiff, in passing across the track and attempting to rescue the child, was guilty of contributory negligence. The law will not impute negligence to an effort to preserve human life, unless made under such circumstances as to constitute rashness in the judgment of prudent persons.....
“ If he believed, and had good reason to believe, that he could save the life of the child without serious injury to himself, the law will not impute to him blame for making the effort.”
Plaintiff in error insists that the court of common pleas instead of leaving the question, as it did, to the jury to say whether the act of the defendant in error, under all the circumstances and according to the rules laid down by the court, was or was not negligent, should have told them that to pass in front of a rapidly moving train, as it was admitted the defendant in error did, even to rescue from danger a child of tender years, was in law an act of negligence that defeated his right of recovery. It is said that the defendant in error voluntarily assumed the risk, that the danger attending his act was apparent, and that however commendable his conduct may have been when viewed from the standing *322 point of humanity, the law will grant no relief for an injury thus brought upon himself. It is apparent that the defendant in error was under no legal obligation to rescue the child; if he had chosen to stand by and permit the approaching train to run over and kill the child, he would have violated no rule of law, civil or criminal; therefore what he did in the matter, was a voluntary act in the sense of that term that he was under no legal'obligation to perform it. That, however, is not a conclusive test of the question. To entitle one to relief for the consequences of the negligence of another it is by no means necessary that the party injured should have been at the time, in the discharge of any duty whatever. His rights in this respect are perfect when he is in the performance of any lawful act, and even, in some instances and in some states, when the act is, in some respects, not strictly lawful.
The act of the defendant in error was not only lawful, but it was highly commendable ; nor was he in any legal sense responsible for the emergency that called for such prompt decision and rapid execution. The negligence of the railroad company in having no watchman at this public crossing, and the unlawful rate of speed the train was running towards it, to which may, perhaps, be added that of the nurse in charge of the child, were the causes of its extreme danger. There was but the fraction of a minute in which to resolve and act, or action would come too late. Under these circumstances it would be unreasonable to require a deliberate judgment from one in a position to afford relief; to require one so situated to stop and weigh the danger to himself, of an attempt to rescue another, and compare it with that overhanging the person to be rescued, would be in effect to deny the right of rescue altogether if the danger was imminent. The attendant circumstances must be regarded; the alarm, the excitement and confusion usually present on such occasions, the uncertainty as to the proper move to be made, the promptness required, and the liability to mistake as to what is best to be done, suggest that much latitude of judgment should be allowed to those who are thus forced by the *323 strongest dictates of humanity to decide and act in sudden emergencies. And the doctrine that one, who, under tho.se or similar circumstances, springs to the rescue of another, thereby encountering even great danger to himself, is guilty of negligence per se, is neither supported by principle nor authority.
In Evansville & Crawfordsville Ry. Co. v. Hiatt, 17 Ind. 102, language is used by the judge in deciding the case, which, to some extent, supports the doctrine, but the decision was not placed upon that ground, and what the learned judge said in that connection may be regarded as obiter dictum. The doctrine is repudiated by the text writers, and all the other cases that come to our notice. In Eckert, Adm'r, v. The Long Island Ry. Co., 43 N. Y. 502, it was held that “ the law has so high a regard for human life that it will not impute negligence to an effort to preserve it, unless made under circumstances constituting rashness in the judgment of prudent persons.” In that case the rescuer lost his life in throwing a small child from the track of an approaching train, and a judgment in favor of his administrator, for damages resulting from his death, was affirmed by the court of appeals. The resemblance between that case and the one before us is very striking. This doctrine has received the sanction of the courts of last resort in Massachusetts and Missouri. Linnehan v. Sampson, 126 Mass. 506; Donahoe v. The Wabash, St. Louis & Pacific Ry. Co., 83 Mo. 560; Beach on Contributory Negligence, see. 15, page 45; Wharton on Negligence, sec. 314; Pierce on Railroads, 329. The doctrine that one is not necessarily chargeable with contributory negligence because he adopted a course of action that imperiled his safety, or even his life, finds support in other courts. Carroll v. The Minnesota Valley R. R. Co., 14 Minn. 57; Penn. Co. v. Roney, 89 Ind. 453; Cottrill, Adm'r, v. The Chicago, Milwaukee & St. Paul Ry. Co., 47 Wis. 634. We. think the court of common pleas did not err in leaving it to the jury to determine, from all the circumstances surrounding the defendant in error at the time he sprang to the rescue, whether the act was rash or not, and in saying to them *324 that if they found it was not rash, then it did not constitute contributory negligence. It is difficult, if not impossible, to lay down in advance a rule by which to determine the extent to which one may risk his safety or his life in emergencies of this character and not be charged with rashness, but the emergency may be such as to warrant the assumption of a high degree of risk, and one so situated may rightfully expect his acts to be construed in the light afforded by all the circumstances that impelled him to their commission, and that he would not be charged with contributing to his own injury, so as to defeat a right of action, because the result showed that the risk he assumed was greater than in the excitement of the moment he had contemplated, or in some other respect his judgment had been faulty.

Judgment affirmed.