RUFUS D. MOULTON

*vs.*

LEWISTON, BRUNSWICK & BATH STREET RAILWAY.

Sagadahoc.    Opinion December 3, 1906.

*Negligence.    Contributory Negligence.    Horse left unhitched and unattended in a city street.*

1.  It is not negligence per se to leave a horse attached to a carriage in the street unhitched.

2.  But when one leaves a horse attached to a carriage, unhitched, unimpeded by any weight, and unattended by any person near enough to control him by the voice or to reach him before he can escape, in a city street in which there is an electric car line, at a time when the conditions are such that cars may reasonably be expected to run with snow scrapers, calculated to frighten horses both by sound and sight, he is guilty of such negligence as will prevent his recovery in an action against the railway company, if the horse frightened by the noise or action of the scrapers,

runs in front of a car and is injured by it. And this is true, although the horse had never been afraid of the electric cars, and had never run away though left unhitched.

3. The evidence in the case is *held* to be insufficient to warrant a finding by the jury that the defendant was guilty of negligence.

On motion by defendant. Sustained. New trial granted.

Action on the case to recover damages for injury to the plaintiff's horse, pung and harness caused by the alleged negligence of the defendant. The plaintiff's servant had driven the horse, hitched into a grocery pung, close beside the sidewalk of Washington Street in the city of Bath, about fifteen or eighteen feet from the defendant's car track, and had left the horse standing there unhitched and unattended while he went to the door of a house for the purpose of taking orders for the plaintiff who was a grocer. While the horse was standing there one of the defendant's cars came along, from the direction in which the horse was facing. When the car was within two or three car lengths of the horse, he suddenly started, turned around and ran onto the car track ahead of the car and was struck by the car and the injury complained of resulted. The horse was so badly injured that he was afterwards killed.

The action was tried at the August term, 1905, of the Supreme Judicial Court, Sagadahoc County. Plea, the general issue. Verdict for plaintiff for $94. 67. The defendant then filed a general motion for a new trial.

All the material facts appear in the opinion.

*E. C. Plummer,* for plaintiff.

*Southard & Glidden,* for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, PEABODY, SPEAR, JJ.

SAVAGE, J. Case to recover damages for injury to the plaintiff's horse, pung and harness, which on February 1, 1905, was struck by one of the defendant's cars. The verdict was for the plaintiff, and the case comes up on the defendant's motion.

The plaintiff's cause of action, as set out in his declaration, is in substance that the defendant negligently allowed its road bed to

become "cumbered with ice and snow, so as to interfere with the prompt and proper control of cars there being operated," that upon the track thus cumbered a car was run by the defendant's servants "at an improper and dangerously high rate of speed, and with much noise and with snow and ice flying from the scrapers of said car, rapidly approached the horse of the plaintiff . . . which had been momentarily left by plaintiff's servant . . . well outside the track of the defendant corporation, so as to be clear of all pass-ing cars," and that "by reason of the noise and rapid approach of said car and of the snow and ice being thrown from the scrapers of said car" the horse became frightened, turned around and ran onto or across the track, in front of the car, and was struck by it. And it is further alleged that the " car failed to stop as it approached the plaintiff's horse," by reason of the negligently high speed of the car, "and especially of the unsafe condition of the railway track."

The case shows that about four days before the accident, snow in considerable quantities had fallen, and there is testimony that at the time of the accident there was snow and ice in places on the rails, although the same or other cars had gone over the track on the day in question. There is also testimony that the rails were "banked in" by snow and ice four or five inches deep, in places. Assuming this to be true, and assuming as claimed by the plaintiff that the horse was frightened by the noise of the approaching car and by the sight of the snow thrown out by the scrapers attached to the car, the condition of the track was not itself the proximate cause of the accident, and is of importance only as it affected the operation and control of the car. The condition of the track is not shown to be an unusual one in the operation of street cars in winter in Maine. The defendant company was not responsible for the snow storm or other weather conditions. They had the right to run their cars in winter as well as in summer, and after a snow storm as well as before. Nor do they appear to have been remiss in the care of their track afterwards, at least so far as they owed any duty to the plaintiff. But the condition of the track is an element to be considered when we come to inquire whether the company was negligent as to the speed at which the car was run.

Under some conditions a speed would be unsafe which would not be under others.

The car was equipped with scrapers near the wheels, so adjusted that they could be raised or lowered by the motorman. When lowered, with the car in motion, they had the effect of scraping away any shoulder of snow or ice which may have accumulated beside the rails, and throwing it from the track. The scrapers on the car in question were being operated just prior to the accident, and doubtless made a noise which could be heard, and threw out snow and ice, which could be seen by the plaintiff's horse. But the scrapers were a reasonable appliance, and the defendant company had the right to use them, and there is nothing in the case to show that they were used improperly.

With regard to the speed of the car, the plaintiff claims that it was behind schedule time, that it was making up time, that it was running at an unusual speed, one witness placing the speed as high as twelve miles an hour. The weight of the evidence is certainly against this proposition, being to the effect that the car was on schedule time and running at an ordinary rate of speed. But the truth of neither proposition settles the question of negligence. The ordinary speed might have been dangerous. An unusual speed might not have been. The question in this case is, not whether the speed was dangerous as to passengers on the car, or to teams or persons upon or about to cross the track, as at a street crossing, but whether it was dangerous as to the plaintiff's horse. Unless the defendant failed to perform some duty which it owed to the plaintiff, under existing conditions, it was not negligent as to him.

The plaintiff's servant had driven the horse hitched into a grocery pung close beside the sidewalk, and left it standing there facing in the direction from which the car came, while he went to the door of a house to take orders. At that point the street from sidewalk to car track was from fifteen to eighteen feet wide. The plaintiff claims that the horse was kind and well broken, and was not afraid of the cars, and was accustomed to being left standing unhitched, and had never been known to run away. The horse did stand still until the car came near it, say within two or three car lengths, at

the outside.  He then suddenly started, turned around and ran onto the track ahead of the car.  The duty of the motorman is to be tested by the appearance of the horse to him.  He saw the horse some distance away.  But he saw him standing quietly, so far as the case shows, by the sidewalk, until the car came near.  He was not thereby relieved of all duty towards the horse, but he had a right to assume that the horse would remain standing.  He might so assume until, at least, there was an appearance of fright or movement of the horse.  He was bound to anticipate and be prepared to avert any reasonably to be expected movement of the horse, but not more.  Measured by these rules, we are unable to see wherein the conduct of the motorman in regulating the speed of the car was negligent as to the plaintiff, even assuming the speed to have been as claimed by the plaintiff.  There was no apparent danger until the car had nearly reached the horse, when he suddenly turned onto the track.  It was then too late to stop the car.  There is no evidence to warrant a finding that the motorman did not use due diligence to stop the car as soon as he could after the horse started.  We think therefore that the plaintiff failed to show that the defendant was negligent.

But there is another ground equally fatal to the plaintiff's right of recovery.  The plaintiff must prove that no want of due care on his own part contributed to the injury.  The plaintiff's servant left the horse in the street unhitched and unattended and without any strap and weight, and went up some stairs to a house.  It cannot be said that leaving a horse attached to a carriage in the street unhitched, is negligence per se.  *Park* v. *O'Brien,* 23 Conn. 339; *Dexter* v. *McCready,* 54 Conn. 171 ; *Wasmer* v. *Del. Lacka. and Western R. R. Co.,* 80 N. Y. 212 ; Thomas on Negligence, 1181; Elliot on Roads and Streets, 628.  And the question of due care is always for the jury, *Bigelow* v. *Reed,* 51 Maine, 325 ; *Griggs* v. *Flickenstein,* 14 Minn. 62 ; *Phillips* v. *Dewald,* 79 Georgia, 732 ; 11 Am. St. Rep. 458 ; *Turner* v. *Page,* 186 Mass. 600 ; and cases above cited ; unless the evidence is such that unprejudiced and fair minded men can reasonably draw only one inference therefrom, *Blumenthal* v. *Boston & Maine R. R.,* 97 Maine, 255; *Maine Water Co.* v. *Steam*

*Towage Co.,* 99 Maine, 473.   But we are of opinion that when one leaves a horse attached to a carriage, unhitched, unimpeded by any weight, unattended by any person near enough to control him by the voice or to reach him before he can escape, in a city street in which there is an electric car line, at a time when the conditions are such that cars may reasonably be expected to run with snow scrapers, calculated to frighten horses both by sound and sight, only one reasonable inference can be drawn.   That is this case.   We decide no other.   It is negligence so clearly that it will bar a recovery by the owner, if the horse, frightened by the action of the scrapers, runs in front of the car and is injured by it.   We do not overlook the fact that the horse had never been afraid of the electric cars, and had never run away, though left unhitched.   He was nevertheless a horse, and these were conditions to which he was probably not accustomed.   The instincts common to the species rendered him peculiarly liable to be frightened by the sight of snow and ice thrown out from under the car by the scraper, and by the sound of the accompanying noise.   These instincts the servant in charge of the horse must be presumed to have known, and knowing the conditions as to snow and ice which surrounded the track, he should have anticipated the lawful use which was made of the scrapers. The verdict cannot be sustained.

*Motion for a new trial granted.*
*Verdict set aside.*