## FRANK SCHULZ v. LEWIS DUEL.[1]

January 15, 1915.

Nos. 18,954—(172).

**Negligence of farmer — evidence.**
    Plaintiff was injured by the running away of a team with which defendant

1 Reported in 150 N. W. 786.

was husking corn in his corn field. Defendant was husking beside the wagon with the reins fastened to the side of the wagon. It is conceded that this is a proper and customary manner of working with an ordinary team. *Held*, there is no evidence that this team was a runaway team or so wild or unsafe as to make it negligence for defendant to use it for husking corn in the usual manner.

Action in the district court for Redwood county to recover $5,044 for injuries sustained while in defendant's employ and $99.40 for wages. The case was tried before Olsen, J., and a jury which returned a verdict in favor of plaintiff for $2,107.71. From an order denying defendant's motion for a new trial, he appealed. Reversed.

Frank Clague and T. Otto Streissguth, for appellant.

Albert H. Enersen, for respondent.

HALLAM, J.

In the fall of 1912 plaintiff was employed to husk standing corn on the farm of defendant. Defendant and his son were similarly employed. The method was as follows: Each husker had a team and wagon. He husked two rows of corn at a time, throwing the corn into the wagon which was moved along astride the second "empty row" to the right. The reins were fastened to the left side of the wagon. One Sunday afternoon in December plaintiff and defendant's son each went out with a team to husk corn. Defendant took another team and followed. Defendant's son was in the lead, plaintiff came along behind him, and defendant was about 40 rods behind plaintiff. The result was that defendant's team was astride one of the rows upon which plaintiff was husking. Soon after defendant commenced, and while he was working beside the wagon, the team started to run, from some cause apparently unknown and ran straight down the corn row and over plaintiff, causing the injury complained of. Plaintiff sued for damages. The jury found in his favor. Defendant appeals from an order denying a motion for a new trial.

Plaintiff was in defendant's employ, and defendant was under obligation to use reasonable care not to injure him, and to use reasonable care to protect the safety of the place in which plaintiff was

obliged to work. His failure to do so would be negligence. The question is, was he negligent?

The evidence shows that the method followed by both plaintiff and defendant was the customary method of husking corn in that vicinity, and no claim is made that this method was ordinarily an improper or negligent one. The day was cold and a high wind was blowing, but no claim is made that there was any negligence in husking corn according to the customary method on this day. The allegation of negligence is bottomed on the claim that this team was a "wild and unsafe or runaway team" and that defendant knew or was chargeable with knowledge of that fact. This was the sole ground of negligence which the trial court submitted to the jury, and he specifically instructed them that if they should find "that the team which ran away and injured the plaintiff was not a wild and unsafe or runaway team, or not known to the defendant to be unsafe or to have runaway propensities, then the plaintiff cannot recover."

It appears to us there is no evidence sufficient to sustain a finding that this team was known to be a runaway team or wild or unsafe. The evidence submitted to prove this was as follows:

Defendant purchased this team in the spring of 1911. There is some evidence of two occurrences which plaintiff characterizes as runaways while the team belonged to a former owner. It is needless to go at length into these occurrences, since there is no evidence that defendant had any knowledge of them. The only evidence reflecting on the quiet disposition of the team of which he was shown to have any knowledge was that of an occurrence in September, 1911, or about 14 months before the accident. On that occasion defendant's 14 year old daughter was driving the team hitched to a hay rake. The ring came off one end of the neck yoke, letting the tongue drop down, and the team ran about 100 feet to an embankment where they were stopped by the tongue running into the ground. This young girl kept her seat, hung on to the reins, and managed to recover control of the team without assistance. The harness was not broken. The tongue of the rake was broken, but the rake was taken to the house and fixed up, the team was hitched to the rake

again, and the same young girl again drove them all through haying time. This incident did not in any sense characterize this team as a runaway team or as wild or unsafe. It is a matter of common knowledge that any team will take fright at the falling of a wagon tongue. Had the team been wild or unsafe or a runaway team, the consequences must necessarily have been much more serious than they were. We are not unmindful of the fact that horses that have once run away are less safe thereafter. But it seems clear that this incident was not such as to render this an unsafe team. There is evidence that this same girl and another sister a little older subsequently drove this team in the course of the farm work, and in the course of such work allowed them to stand unhitched, and that they showed no disposition to run away. During the fall of 1911 defendant and his daughter husked 52 acres of corn with this team, fastening the lines in the same manner as on the day of the accident, and in the fall of 1912 defendant used them to a considerable extent in the same manner. At no time did they ever manifest any disposition to run away.

There was some evidence on the part of plaintiff that defendant's son had told him that the reason his father always drove this team and always husked by himself was that "the team is too high-lifed," and that defendant's daughter told him after the accident "that isn't the first time that team has run away." Defendant. was not present at any of these conversations and there is no evidence that he had any knowledge of them. These alleged admissions of defendant's children cannot bind defendant and have no probative force against him.

There are many cases in the books involving the question of liability of the owner of horses for injuries caused by their running away. Some of them involve the question of negligence by reason of allowing horses to stand unattended and unhitched on a street or a public highway. Many of these will be found collected in Griggs v. Fleckenstein, 14 Minn. 62 (81), 100 Am. Dec. 199; Moulton v. Lewiston B. & B. St. Ry. 102 Me. 186, 66 Atl. 388, 10 L.R.A. (N.S.) 845; Corona Coal & Iron Co. v. White, 158 Ala. 627, 48 South. 362, 20 L.R.A.(N.S.) 958. They throw but little light on a

case like this. It is the rule of many cases that the fact that a horse is found running upon a public highway unattended gives rise to a presumption of negligence on the part of the owner. Dennery v. Great Atlantic & Pacific Tea Co. 82 N. J. Law, 517, 81 Atl. 861, 39 L.R.A.(N.S.) 574. This rule of presumption can have no application to this case, for it is conceded that there is no negligence in using an ordinary team in the manner in which defendant used this team on this occasion.

The sole question here is whether this team was one which required handling with special care, or, in other words, whether it was negligence to use this team in the manner customary with ordinary teams. We would not say that it was necessary for plaintiff to prove that the team was vicious in order to make out a case. A team might be so high spirited as to make it unfit for use for husking corn in the customary manner. But we are constrained to hold, on the record in this case, that the use of this team by defendant was not sufficient to charge him with negligence.

Plaintiff sued also for a balance due for services rendered by him in husking corn. This claim is unquestioned. The verdict should stand for the amount claimed in the complaint upon this cause of action. A new trial is granted upon the other issues in the case.

Order reversed.