HORACE LEMON and Another v. MILO T. DE WOLF.[1]

June 5, 1903.

Nos. 13,423—(74).

## Complaint.

*Held*, that the complaint herein, an action brought to recover a commission said to have been earned by plaintiffs as real estate brokers by

[1] Reported in 95 N. W. 316.

89 M.—30

procuring and producing to defendant a purchaser for certain land, stated a cause of action.

**Variance.**

The contention of defendant's counsel that there was a material variance between the contents of a letter introduced in evidence to establish the contract between the parties and the agreement relied on and set forth in the complaint considered, and disposed of.

**Verdict—Evidence.**

*Held,* that there was testimony sufficient to sustain a finding of the jury that the letter above mentioned, not written by defendant personally, was written by his authority; and, further, that it was sufficient to justify a finding that, before making the sale of the land, the defendant was advised and well knew that the party purchasing had been procured by the plaintiffs, and had been sent by them to him to complete the purchase; and also that the trial court was, upon the testimony, justified in refusing to submit to the jury the question as to whether or not plaintiffs procured such purchaser.

Action in the district court for Cottonwood county to recover $640 and interest, as broker's commission, alleged to have been earned by plaintiffs upon procuring a purchaser for defendant's land. The case was tried before P. E. Brown, J., and a jury, which rendered a verdict in favor of plaintiffs for the sum demanded. From an order denying a motion for a new trial defendant appealed. Affirmed.

*Wilson Borst* and *J. G. Redding,* for appellant.

*Stuart & Glover,* for respondents.

COLLINS, J.

1. If defendant's counsel had not urged so strenuously, not only in his brief, but orally, that the complaint herein failed to state facts sufficient to constitute a cause of action, we should say, as did the court below, that "there is nothing in the point." As it is, we shall refer to the subject briefly. The complaint alleged, in addition to formal matters, that the parties to this action entered into an agreement whereby the plaintiffs were to procure a purchaser for certain described lands, belonging to defendant, at a price of $30 per acre, and for procuring such purchaser the latter agreed to pay to the former, as a broker's commission, the sum of

one dollar per acre—in the aggregate $640. It further alleged that, after spending time and money in efforts to find a purchaser, plaintiffs did procure one, sent him to the defendant to buy the land, at the same time notifying the latter that they had procured such person as a purchaser, and that, well knowing this fact, the defendant, within fifteen days after the agreement before mentioned, sold the land to him at $30 per acre, upon terms which were accepted by defendant, and that the latter then refused to pay any part of the commission.

Such a complaint stated a cause of action. It alleged an agreement whereby a purchaser was to be procured for defendant's land at a certain price per acre, for which services the plaintiffs were to receive a certain specified sum of money from defendant as commission; that they procured and sent such a purchaser, and that he bought the land at the price fixed. This was sufficient.

2. The answer was a general denial. At the trial the plaintiffs introduced in evidence a letter purporting to bear the defendant's signature, but which seems to have been written to them by his son, a young man over twenty-one years of age, in which was defendant's offer to sell the land at $30 an acre, and allow to plaintiffs one dollar per acre as commission, or, as was stated in the letter:

"In other words will sell for $29 per acre net to me. This price good to April 1, 1901, then subject to change without notice. Above price is subject to mortgages and leases now on land; my equity cash."

Counsel for defendant objected to the introduction of this letter in evidence upon the ground that it was incompetent, irrelevant, and immaterial, and that no foundation had been laid therefor. They now urge, in support of their objection, that there was a material variance between the terms and conditions found in the letter and the agreement alleged in the complaint. Conceding that there was such a variance, it is obvious that this objection was not suggested at the trial. If it had been, and it had also been suggested that by the variance defendant was or would be misled to his prejudice in maintaining his defense, there might be some

merit in the contention. If the point had been made in the court below, the plaintiffs could have amended their complaint to correspond with the proof, under G. S. 1894, § 5262; but, as there was no intimation of a variance, they had no such opportunity. The case clearly comes within the decision of this court in Adams v. Castle, 64 Minn. 505, 67 N. W. 637. So we hold that, if there was a variance, the defendant's counsel cannot now take advantage of it.

3. It is contended—and this was the principal question submitted to the jury—that there was an entire failure to show authority in the young man to write the letter before referred to. We have examined the testimony, and are satisfied that this was a question for the jury, under all the circumstances, although the defendant testified that the letter was written without his authority. But it was shown at the trial that he knew of the letter at the time he made the sale, and that he then talked with the purchaser, Webb, more or less about its contents. Although his son was in his employ when the case was tried, he failed to call upon him to testify whether or not he had authority to write the letter. He could have called him as a witness without any difficulty, for he was within easy reach of the court at the time; and that he did not may be considered when passing upon the question of authority. Further, upon cross-examination defendant admitted that he told Webb at the time of the sale that his son wrote the letter, and also informed him that he had a copy of it in his possession, which he would show to him. He did not then deny the son's authority, or repudiate what had been written. This was all within a few days after the letter was received by plaintiffs, and was just prior to closing the bargain. The testimony was sufficient to uphold the conclusion of the jury that the son had full authority to write as he did.

4. The plaintiffs and defendant resided at different towns, several miles apart, and the purchaser went to defendant's residence to close the trade. It is contended as a reason why the verdict should be set aside, that defendant did not know at the time of the sale that the plaintiffs had sent Mr. Webb to him, or that he was a purchaser provided by them; but Webb's testimony clearly shows that the defendant was told and well knew before the trade

was closed that the plaintiffs had informed him about the land, and had given him the price per acre at which it could be purchased. Webb testified that he told defendant he was prepared to pay him the $30 per acre, the price given to plaintiffs, and also that we "talked considerably" about the plaintiffs' agency. And, further,

"I told him," said Mr. Webb, "that I had not seen the letter, but that I understood that [the price] was not subject to change, and that I had come up on that understanding."

From the testimony of Mr. Webb the jury were justified in finding that defendant well knew, before the sale was made, that he was a purchaser furnished or provided by the plaintiffs.

5. The defendant's counsel undertook to have the jury charged that, although they might find the fact to be that defendant did authorize the plaintiffs to sell the land, or to procure a purchaser therefor, yet, if they did not in fact procure Webb as a purchaser, they could not recover, and the verdict should be for the defendant. The court refused to so instruct, evidently upon the theory that the testimony was conclusive that plaintiffs did procure and produce this actual purchaser. The court was right. The testimony of the plaintiffs and of Mr. Webb himself was conclusive upon this matter, defendant made no effort to dispute it, and the jury would not have been justified in finding to the contrary.

We see no other questions which need discussion, and the order appealed from stands affirmed.