(May 21, 1908.)

# D. W. CHURCH et al., Respondents, v. CHARLES DUNHAM, Appellant.

[96 Pac. 203.]

REAL ESTATE BROKERS—COMMISSION FOR PROCURING PURCHASER—LIABILITY OF OWNER FOR COMMISSION TO AGENTS—INSTRUCTIONS.

1. Where a real estate agent is employed to sell a piece of property for a net sum to the owner, and he procures a purchaser who is ready, willing and able to buy the property and pay therefor a specified sum which is in excess of the net sum to be received by the owner, and before the sale is closed and consummated the owner of the property sells to the purchaser thus procured by the agent, with the knowledge that such agent has procured the purchaser and exhibited the property to him and has been dealing with him with reference thereto, the owner will be held liable to the agent for a commission equal to the difference between the net price which he was to receive and the price the purchaser was ready, willing and able to pay to the agent for the property.

2. Where an agent is employed to sell a piece of property at a specified net price, and the agent procures a purchaser who is ready and willing and able to pay a sum in excess of the net price, and notwithstanding such fact and information thereof by the owner of the property, if the owner sells the property to such purchaser, he will be held liable for the commission the same as if the agent had completed the sale himself.

3. It is not error for the court to refuse to submit to the jury an instruction as to the good faith of the defendant in selling property that he has listed with an agent and without regard to the agent or the payment of commission, where none of the evidence in the case tends to establish good faith on the part of the owner in dealing with the broker with reference to such commission.

4. It is immaterial whether the contract of the broker was one to sell the property or to procure a purchaser for the property, if it appears from the evidence, as a matter of fact, that the conduct of the owner was such as to prevent and make it impossible for the agent to consummate the sale.

(Syllabus by the court.)

APPEAL from the District Court of the Fifth Judicial District for the County of Bannock. Hon. Alfred Budge, Judge.

Action by the plaintiffs to recover a commission for the sale of real estate. Judgment for plaintiffs and defendant appeals. *Affirmed.*

Gray & Boyd, for Appellant.

It is error to refuse to give instructions which are fairly within the pleadings where there is any evidence to support them. (*McGee v. Wineholt,* 23 Wash. 748, 63 Pac. 571; *Binkley v. DeWall,* 9 Kan. App. 640, 58 Pac. 1028.)

The first instruction and the first paragraph of the second instruction requested by appellant are based on his claim of the right, at all times, to sell his own property, subject, of course, and only, to any known earned commission by an authorized acting agent. (*Dole v. Sherwood,* 41 Minn. 535, 16 Am. St. Rep. 731, 43 N. W. 569, 5 L. R. A. 720; *Sturart v. Murray,* 92 Ind. 543, 47 Am. Rep. 167.)

The principal should at least know from the agent of his (the agent's) participation in the transaction. The rule in regard to the right of the agent to compensation has been stretched in some courts to its utmost tension, and should, if possible, be restricted and not enlarged. While the agent should in all cases be entitled to payment of commissions honestly earned, the owner of the property should not be at the mercy of an agent of whose pretended participation he had no knowledge whatever. (*Anderson v. Smythe,* 1 Colo. App. 253, 28 Pac. 478.)

The good faith of the defendant and the reasonable modification of the authority of the agent to handle the property was emphatically before the jury. From the examination and cross-examination of the witnesses, it was recognized as a material issue in the case, and the defendant was entitled to an instruction on this issue. (*Sibbald v. Bethlehem Iron Co.,* 83 N. Y. 378, 38 Am. Rep. 441; *Cathcart v. Bacon,* 39 N. W. 331; *Babcock v. Merritt,* 1 Colo. App. 84, 27 Pac. 882.)

Clark & Budge, for Respondents.

Where in the midst of negotiations the owner steps in and by his wrongful conduct prevents the broker from success-

fully meeting the ordinary requirements, it is enough for the broker to establish at the trial that he was the moving cause of the sale,- that through his efforts the party to whom. the sale was made became interested in the property, which interest thus awakened in him finally resulted in the sale, and it is not material under such conditions whether or not at the time the agent solicited the purchaser to buy, the latter was able.   Neither is it material that no agreement as to the price had been reached between the broker and the purchaser. (*Wood v. Broderson,* 12 Ida. 190, 85 Pac. 490; *Marlatt v. Elliott,* 69 Kan. 477, 77 Pac. 104; *Smith v. Anderson,* 2 Ida. 537, 21 Pac. 412; *Jaegar v. Glover,* 89 Minn. 490, 95 N. W. 311; *White v. Collins,* 90 Minn. 165, 95 N. W. 765; *Hubachek v. Hazzard,* 83 Minn. 437, 86 N. W. 426; *Driesback v. Rollins,* 39 Kan. 268, 18 Pac. 187; *Plant v. Thompson,* 42 Kan. 664, 16 Am. St. Rep. 512, 22 Pac. 226; *Anderson v. Cox,* 16 Neb. 10, 20 N. W. 10; *Ratts v. Shepherd,* 37 Kan. 20, 14 Pac. 496; *Martin v. Fegan,* 95 App. Div. 154, 88 N. Y. Supp. 472.)

The agent is entitled to his commission if he found the purchaser, even though the defendant did not know that the plaintiff sent the purchaser to him.  (*Rounds v. Allee,* 116 Iowa, 345, 89 N. W. 1098; *Metcalfe v. Gordon,* 86 App. Div. 368, 83 N. Y. Supp. 808.)

The rule does not require a formal notification in such a matter.  It is sufficient if plaintiff procured the purchaser. (*Wood v. Broderson,* 12 Ida. 190, 85 Pac. 490.)

Or if he knew, before the sale, from the purchaser himself that the agent had informed him (the purchaser) concerning the property, by reason of which information he called upon the owner to conclude the bargain, it is sufficient.  (*Lemon v. DeWolfe,* 89 Minn. 465, 95 N. W. 316.)

Where a verdict is according to the law and evidence, or is the only one which could have been found consistent with the evidence, erroneous instructions are harmless, as are also other errors.  (*Ingemarson v. Coffey* (Colo.), 92 Pac. 909; Century Digest, Vol. 3 App. in Error, sec. 4034.)

AILSHIE, C. J.—This is an action to recover a commission for the sale of real estate.  Plaintiffs recovered judgment and

the defendant appealed from the judgment and order denying his motion for a new trial. Appellant makes three assignments of error: 1. The action of the court in giving certain instructions; 2. The ruling of the court in refusing to give certain requested instructions; and 3. The insufficiency of the evidence to justify the verdict and judgment. We will consider the last assignment of error first, for the reason that our consideration of the instructions must rest largely upon the evidence in this particular case.

Appellant owned four lots in the city of Pocatello, and on the 11th day of June, 1907, he went to the office of the real estate brokers, Church, White & Chilson, and not finding anyone in the office, left the following note on the desk:

"Mr. Earl White:

"See if you cannot sell those four lots 17, 18, 19 and 20 in Block 234; net me $1200; quick sale.

                    "Oblige,
                         "CHAS. DUNHAM."

White testifies that on June 10th, the day before the note was written, he met Dunham on the street, when the latter told him that he would like to sell these four lots, as he was needing money, and wished he, White, would make a special effort to sell them for him; that Dunham told him he wanted $1200 and that all he realized above that might be retained as commission. White says that he went that afternoon to see the prospective purchasers, Ferrando and Benolken, and made an appointment to take them out to show them the property the next morning. At any rate, on the morning of the 11th, after this note was written and left at the office of respondents, one of the members of the firm took Ferrando and Benolken out and showed them the property and offered to sell it to them for $1350. Later in the day the purchasers offered White $1325 for the property. At that time it seems that White was going somewhere, or at least was engaged for the time being, but told them he would see them in a few hours. Before White returned to close the deal with these purchasers, he saw the owner of the lots and told him he had a purchaser and that he would make out the deed that afternoon and bring

it over for him to sign, but he did not tell the owner the names of the purchasers. In a short time thereafter, and before White finally closed up the deal with Ferrando and Benolken, the latter took it into his head to go over and see the owner himself. What there occurred is best told in Benolken's own language:

"I went to see Mr. Dunham between 12 and 1 o'clock on June 11th. It was after I had been up to see the property. He was at home at the time. I told him at that time that I had been dealing with Church & White. He was lying down at the time on the lounge, and I asked him if he owned those four lots opposite the courthouse, and he told me yes. I asked him what he wanted for the four lots, and he told me $1200 net. I told him to come down to the Salt Lake saloon. He says, 'Wait a minute; that these lots were in the hands of Church & White, and if they were not sold by 7 o'clock, to be down to meet him at the depot and make a deposit of $50 on the lots and they were mine.' He told me at the time that Church & White had the property for sale, but that if they did not make the deal during the day and by 7 o'clock that evening, and I would meet him at the depot and make a deposit, I could have the property. When he told me his price was $1200 net, I told him I had offered them $1325."

Dunham and the purchaser both agree that the latter informed Dunham that he had offered White $1325 for the property, and that White had refused to accept that sum, and that notwithstanding this information, Dunham offered to sell him (Benolken) the property for $1200 if it was not disposed of by 7 o'clock that evening. Later in the evening White saw Benolken concerning this sale and told him he was ready to take the $1325 he had offered for the property. Benolken made some kind of excuse, and among other things told him he would have to see his wife about it, and delayed the matter until about 8 o'clock, when he saw Dunham at the depot in Pocatello and made him a payment of $50 on the property and closed the deal for the purchase price of $1200. As soon as White learned that the sale had been made to this man, he demanded his commission of $125, and on refusal of Dun-

ham to pay it, commenced this action. Dunham now contends that under this state of facts he is not liable for commission; that he acted entirely in good faith in the matter, and that the brokers did not present the purchaser to him and did not secure a purchaser that was ready, willing and able to pay $1325 for the property.

As we view the evidence in this case, it does not call for much discussion on the question of its sufficiency. It is clear to our minds that the respondents were entitled to their commission for securing a purchaser for this property. It is true that no fixed or definite time was given them in which to secure a purchaser, but it necessarily follows that they must have a reasonable time, and certainly the matter of one day would not be an unreasonable length of time to allow in which to secure a purchaser for such property. Another reason which is in itself sufficient and controlling in this case is that Dunham knew from Benolken himself that the respondents had been trying to deal with this purchaser, and had taken him out to show him the property and had made him a price on it. The owner who had listed his property with these brokers must have known that they would ask more than $1200 for the property since they were to secure him this sum net. When he learned that Benolken was a purchaser secured by the real estate brokers, and in the face of that knowledge informed the purchaser that his price on the property was $1200, and that if it was not sold by 7 o'clock that evening, that he, the owner, would sell it for the sum of $1200, he at once rendered it impossible for the brokers to secure $1325 from the same purchaser for the property, or any other sum greater than $1200. It is extremely difficult to understand why the owner of property who had listed it with a real estate firm and who had been informed that a purchaser had offered $1325 for the property, would turn around, and in the face of such information, take the sum of $1200 for the property and thus defeat the right of the brokers to secure their commission from the purchaser when the owner himself derives no advantage from such a transaction. We agree with appellant's contention that under the law a broker who un-

dertakes to secure a purchaser, in order to entitle him to his commission, must secure a purchaser who is ready, willing and able to buy the property at the stipulated price. In order, however, to entitle the brokers to their commission it is not necessary that they take the purchaser to the owner of the property and give him a formal or any introduction; all that is necessary is for the owner before making the sale himself to acquire the knowledge,—it matters not in what manner,—that the purchaser is the client of the broker and has been procured by the broker to purchase the specific piece of property at the price and on the terms designated. (*Wood v. Broderson,* 12 Ida. 190, 85 Pac. 490; *Lemon v. De Wolf,* 89 Minn. 465, 95 N. W. 316; note to *Ward v. Cobb,* 12 Am. St. Rep. 589.) Here the brokers had procured a purchaser who was ready, willing and able to pay $1325 for the property. The owner made it impossible, however, for the brokers to consummate the sale at that price for the reason that he notified the purchaser that after a certain hour in the day he would take $1200 for the property. There was no longer any use of the brokers trying to deal with this man for any greater price than the owner had offered to sell for.

The appellant complains of the instruction of the court to the jury wherein the court told them that if any recovery could be had at all, the "plaintiffs are entitled to recover such amount as they would have realized on such sale except for the action of the defendant, not exceeding the amount claimed in the complaint." In other words, the court told the jury that if they found that plaintiffs were entitled to recover at all, that the amount to which they would be entitled would be the difference between $1200 and the sum for which they could have sold the property to this purchaser. Appellant complains of this instruction for the reason that the plaintiffs alleged that $125 was a reasonable compensation to be allowed as a commission; that this instruction, therefore, took away from the jury the right of determining what was a reasonable amount. We do not think this objection is well taken for the following reasons:

In the first place, the complaint sets up the nature of the contract under which the plaintiffs undertook to sell this property, and alleges that they procured a purchaser who was ready, willing and able to pay the sum of $1325 for the property, and that except for the action of the defendant they would have sold the property for that price, thereby earning the sum of $125 as their commission. After other allegations as to the nature of the contract and the services performed, the complaint closes with the general allegation that the sum of $125 is a reasonable sum to be allowed as commission for procuring a purchaser for the property.

As we view the allegations of this complaint, in the absence of proper and timely objections taken by way of demurrer or motion, it would support a verdict and judgment either for the specific sum of $125 or for a reasonable commission to be determined from the evidence. On the other hand, the facts disclosed by the witnesses on the stand as contained in this record show clearly that the plaintiffs were entitled to the fixed sum of $125 if they could recover at all, and the court was clearly correct in so advising the jury.

Appellant also complains of that part of the court's instruction No. 2 wherein the court told the jury that if the jury found certain things therein enumerated to be true, then the "plaintiffs are entitled to recover, notwithstanding the actual sale was completed by defendant acting independently of the plaintiffs." Appellant insists that the error in this instruction lies in the fact that it withdrew from the jury a consideration of the defense defendant sought to interpose, to the effect that he acted in good faith in selling the property to the purchaser for $1200. Under the facts in this case we think the court correctly advised the jury on that point. All the evidence in the case goes to show that the defendant did not act in good faith, and that his defense to that effect was not well founded. Whatever he may have thought or intended, as a matter of fact, there is only one legal conclusion that can be drawn from the evidence, and that is to the effect that he was not acting in good faith with the brokers when he sold the property to their purchaser.

Appellant contends that this case differs from the cases where the real estate agent merely agrees to find a purchaser; that in the present case the contract must be deemed a contract to sell, and that unless the agent consummated the sale, he is not entitled to his commission. It is true that this distinction runs through the cases, but it is unnecessary to consider that distinction in the present case. Whether the respondents were to secure a purchaser or make the sale themselves is immaterial here, for the reason that appellant by his conduct rendered it impossible for the respondents to consummate the sale for a price that would enable them to obtain any commission whatever. On the other hand, we have the evidence from the purchaser himself, as well as the brokers, that he was ready, willing and able to pay $1325 for the property, and it is quite clear from the record that he would have taken the property at that price but for the offer made him by the owner himself.

We find no error in the instructions of the court, nor did the court err in refusing to give the instructions requested by the defendant. Some of them correctly state the law, but go into matters apparently not involved in the evidence, while some of these requests do not correctly state the law as applicable to any case. The judgment should be affirmed, and it is so ordered. Costs in favor of respondents.

Sullivan, J., and Stewart, J., concur.