(94 South. 529)

HUTSON et al. v. YERKES. (8 Div. 427.)

(Supreme Court of Alabama. Nov. 2, 1922.)

1. Brokers ⬅69—Where contract silent as to compensation, agents to sell at net price entitled to amount exacted from purchaser above such price.

Where the contract by which real estate agents were authorized to sell land for a certain amount net to owner said nothing about compensation to be paid in case of such a sale, they would be entitled as compensation to whatever they could exact from the purchaser in excess of the stipulated net price.

2. Brokers ⬅56(3)—Rate stated as to liability for commission where owner sells to purchaser procured by agent with authority to sell at net price.

Where a real estate agent employed to sell property at a net sum to the owner procures a purchaser ready, willing, and able to buy at a price in excess of the net sum to be received by the owner, and before the sale can be closed and consummated by the agent, the owner himself sells to the purchaser, with knowledge that the agent has exhibited the property to him and been dealing with him, the owner will be held liable to the agent for a commission equal to the difference between the net price he was to receive, and the price the purchaser was ready, willing and able to pay the agent.

3. Brokers ⬅86(1)—Evidence held insufficient to bring real estate agents employed to sell at net price within rule permitting recovery where owner himself sells to procured purchaser.

Evidence held insufficient to bring real estate agents suing for commission within rule allowing recovery by an agent employed to sell at a net price to the owner, who sells himself to a purchaser procured by the agent.

---

Appeal from Circuit Court, Morgan County; Robert C. Brickell, Judge.

Action by P. R. Hutson and J. G. McCluskey against J. W. Yerkes. From a judgment for defendant, plaintiffs appeal. Affirmed.

The action is to recover compensation for effecting a sale or finding a purchaser for certain land, at the instance of the vendor, who is the defendant herein. The complaint contains common counts for work and labor done, and money had and received, and also several special counts, including counts 5 and 6.

Count 5 alleges that appellants were to have as their commission or compensation any sum they might sell the land for, over and above $18,000, and that they procured from one Calvin an agreement to take the lands and pay the sum of $18,000 therefor, and also the said Calvin agreed to pay the appellants the further and additional sum of $800 as commission and compensation, and that, after said agreement had been made with Calvin, the appellee sold and conveyed the land direct to Calvin for the sum of $18,000 in order to defeat and deprive appellants of their compensation, and for this reason the appellee owes the appellants compensation or commission for the services performed.

Count 6 alleges that, after the land had been placed with appellants, and they had procured a purchaser who was willing and able and ready to buy on the terms of the original agreement, appellee imposed new terms and conditions, and appellee refused to carry out the agreement originally made, and also breached his contract in failing to pay appellants compensation and commission, to which they were entitled.

Appellee filed plea of general issue, and the case was submitted to the court without jury, and judgment was rendered in favor of appellee, from which this appeal is prosecuted.

In the brief for appellant, the more important facts, as shown by the record, are epitomized as follows:

In July, 1917, appellants were real estate agents located in Morgan county, Ala., and received a telegram from S. L. Yerkes, son of John W. Yerkes, asking appellants to meet him at Hartselle, regarding the sale of the Orr land, and, in pursuance of said telegram, a meeting was had, and a contract was given to the appellants by S. L. Yerkes to act as real estate agents in making sale. Appellants offered the land to one Calvin. After taking the matter up with Calvin, the time limit of appellants for selling the land expired, and on December 18, 1917, appellants sold the land to Calvin, at the sum of $18,000, as authorized in the letter from S. L. Yerkes to appellants on July 12, 1917. Calvin agreed to pay Hutson & McCluskey a compensation or commission to the amount of $800. After appellants notified Yerkes of the sale of the land, in pursuance of said notice Yerkes, on December 29, 1918, advised appellants that one N. L. Steele, representing him, would be in Decatur on a certain day with deed to close up the deal, and in pursuance of said agreement Steele did come to Decatur on the day appointed, and did bring with him deed executed by J. W. Yerkes to Calvin, which deed was tendered by Steele to Calvin, but which Calvin would not accept until he had been given time to have his attorney examine title to lands which he was buying. The matter of closing the deed was therefore delayed, and during the period of delay Calvin and associates went to Birmingham and closed the deal with Steele and Yerkes, the agents of appellee, for the land, at and for the sum of $18,100.

The contract authorized appellants to sell the land for $18,000 net to the vendor, and contained no stipulation as to payment of commissions except the following:

"It should be understood, in case you put the deal through, that the $18,000 is to be net to my father (the vendor), and that the purchaser would pay all costs of examining titles, recording mortgages, attorney fees, etc."

Plaintiffs sold the land to Calvin and Jackson, the contract being that Yerkes. the vendor, should receive $18,000, and plaintiffs $800. Plaintiff McCluskey testified:

"He (Calvin) said 5 per cent. is a good commission on that sized deal, and he wanted us to make a little reduction, so we came to an agreement that we would reduce it down to $800 instead of $900."

And further:

"I signed that contract of sale * * * as an agent for S. L. Yerkes. I was agent for Calvin after certain negotiations took place. We considered that we were his agents after making the deductions we did make on our commissions at his request. When we signed this contract of sale * * * we became Mr. Calvin's agent, we considered, as we were acting for him. * * * Mr. Calvin agreed, and of course he knew, that the $800 was to go to us."

Plaintiff Hutson, testified, among other things:

"We were selling for $18,800. * * * Calvin was paying us the $800 commission, and Yerkes was to get $18,000 net to him. * * * Calvin was to pay all expenses, and we knocked off $100. * * * Our contract was all the way through with Calvin, and not with Jackson. I guess we were Jackson's agent. * * * We were agent for J. W. Yerkes all the time, and we looked to Mr. Calvin for our commissions, as he told us he would pay the $800, and we put it in the deed to be sure that it would be delivered."

There was much other testimony not necessary to be here set out.

E. W. Godbey, of Decatur, and Eyster & Eyster, of Albany, for appellants.

A complaint alleging that defendant authorized plaintiff to sell property on specified term, that plaintiff fully complied therewith, that when it was reported to defendant he approved and accepted the offer, and that the purchaser was able and willing to pay for the property, but that defendant refused to consummate the trade, sufficiently shows an employment of plaintiff. 149 Ala. 256, 42 South. 740. A real estate agent, employed to make a sale of lands on specified terms, is entitled to compensation when he procures a purchaser able, ready, and willing to buy on the terms specified, and the vendor accepts him, though the purchaser may afterwards decline. 195 Ala. 207, 70 South. 637; 177 Ala. 636, 59 South. 286; 149 Ala. 251, 42 South. 988.

Tennis Tidwell, of Albany, for appellee.

Brief of counsel did not reach the Reporter.

SOMERVILLE, J. [1, 2] While the contract by which plaintiffs were authorized by defendant to sell his land for $18,000 net to him said nothing about the compensation to be received by plaintiffs in case of such a sale we think the clear implication was that plaintiffs would be entitled to have for their services whatever they could exact from the purchaser in excess of the net price stipulated.

"Where a real estate agent employed to sell property at a net sum to the owner procures a purchaser ready, willing, and able to buy at a price in excess of the net sum to be received by the owner, and before the sale can be closed and consummated by the agent the owner himself sells to the purchaser, with knowledge that the agent has exhibited the property to him and been dealing with him, the owner will be held liable to the agent for a commission equal to the difference between the net price he was to receive, and the price the purchaser was ready, willing, and able to pay the agent." 9 Corp. Jur. 581, § 79, note 54 (b); Church v. Dunham, 14 Idaho, 776, 96 Pac. 203; Baker v. Murphy, 105 Ill. App. 151; Sill v. Ceschi, 167 Cal. 698, 140 Pac. 949.

[3] But in this case plaintiffs have not brought themselves within the operation of that rule. Their brokers' contract with defendant neither expresses nor implies anything as to the manner of collecting their compensation. It might have intended either that the purchaser would pay to the vendor the whole amount, including the excess over $18,000, to be by the vendor paid over to the brokers, or it may just as well have intended that the brokers should look to the purchaser directly for the payment, and that the vendor should have nothing to do with it.

The testimony of plaintiffs, as shown by the extracts quoted in the statement of facts above, strongly confirms the latter theory. and, indeed, in their statement of the case in their brief, counsel for appellants say that "Calvin agreed to pay Hutson & McCluskey a compensation or commission to the amount of $800." Further confirmation is found in the fact that in McCluskey's written memorandum or contract of sale, as he calls it, he certified that he had sold the property "for $18,000." So, also, the correspondence between Yerkes and McCluskey shows plainly that only the $18,000 should be paid to Yerkes, and that Yerkes had nothing to do with the collection of the $800 for the brokers.

After McCluskey had made the deal with Calvin, it appears from the testimony of Mr. Steele, who was acting as attorney for Yerkes, that Calvin insisted upon a guaranty that the property would not be redeemed from a mortgage foreclosure sale, under which Yerkes had acquired the title, and that Calvin refused to close the deal without such a guaranty. It appears also that a controversy arose between S. L. Yerkes and McCluskey as to the payment of the taxes for 1917 and 1918, Yerkes insisting that his $18,000, net, meant exclusive of those taxes, and on January 2, 1918, he wired to McCluskey giving him 48 hours to close the trade with Calvin, terms $18,000 cash net, purchaser to pay taxes for those years. Receiving no answer, Yerkes again wired to him on January 4, asking his intentions as to taxes mentioned, and McCluskey's reply on the same day made no response as to that feature. Thereupon Yerkes wired withdrawing all propositions made by him to McCluskey, and Yerkes then proceeded on his own initiative to put the deal through with Calvin and his associates, the consideration agreed on and paid being $18,000.

There was a great deal of other testimony, with some material conflicts, but, under all the evidence, our judgment inclines to the view that the plaintiffs do not make out a case of liability against this defendant.

Let the judgment be therefore affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.